ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* WILLIAMS.

Opinion delivered May 19, 1913.

1. EVIDENCE—EXPERT TESTIMONY—HOW ADMISSIBLE.—Expert witnesses may not decide disputed questions of fact, but may only give their opinions upon matters upon which their opinions are sought, in order that the jury may determine the question therefrom. (Page 392.)

2. EVIDENCE—STATEMENTS OF INJURED PERSON—RES GESTAE.—In an action for damages for personal injuries against a railroad company, testimony of the attending physicians as to statements made to him by the injured party are not admissible, being hearsay and not a part of the *res gestae.* (Page 394.)

3. EVIDENCE—PERSONAL INJURIES—EXPERT TESTIMONY—FOUNDATION.— In an action for damages against a railroad company for personal injuries due to negligence, where no witness corroborated the testimony of the plaintiff as to the cause of the injury, but several witnesses contradicted her testimony, statements by her to her physician who treated her are incompetent as a foundation upon which to base an expert opinion as to the cause of the injury. (Page 395.)

4. APPEAL AND ERROR—INCOMPETENT TESTIMONY—PREJUDICIAL ERROR.— In an action for damages for personal injuries, against a railroad company, it is necessary for the plaintiff to prove that she was injured under such circumstances as would show negligence upon the part of the defendant before a recovery could be had, and when incompetent testimony has been admitted which tends to strengthen plaintiff's case, the error in admitting same is prejudicial. (Page 395.)

Appeal from Jackson Circuit Court; *R. E. Jeffery,* Judge; reversed.

STATEMENT BY THE COURT.

Appellee brought this suit for damages for personal injuries, alleged to have been sustained while a passenger, boarding appellant's passenger train at Oliphint, Arkansas.

It was alleged that the railroad company negligently failed to stop the train a reasonable length of time to enable her to enter the car, negligently caused the train to give a quick and sudden start, and then to come to a quick and sudden stop, while she was on the steps of the platform, causing her body to be violently twisted and jerked, and to be wounded, bruised and lacerated upon the body and limbs, causing internal injuries in the region of the stomach, sexual organs, hips and back, from all of which injuries she has suffered great physical pain and mental anguish, and that her injuries were permanent, etc.

The defendant denied all the allegations of negligence and pleaded contributory negligence of appellee in bar of the action.

The plaintiff testified that she was a woman of twenty-five years of age, the mother of two children; that she bought a ticket from the agent of the railroad company at Oliphint, got on the train, and just as she got to the platform, the train started up with a jerk and threw her back; that she caught with her hand, and the train stopped suddenly and threw her on her side, and that her side struck the hand railing. She said further that she went on to Newport, the point of her destination, and went to the doctor's office to consult him about the injury. No witness corroborated her statement as to the injury, or occurrence, and she made no complaint to any of the railway employees about having been injured.

All of the train crew testified, each of them stating that there was no rough handling of the train in the stop at Oliphint on the morning on which plaintiff claimed to have received the injury. That the train was stopped

the usual length of time; that it was not started up and stopped again after the first stop was made, and that no complaint was made by any one of any injury that morning. The porter stated that he did not know of any rough handling of the train at Oliphint on that morning; that plaintiff was not thrown backward or forward by the starting or stopping of the train while she was getting on or off, and that she made no complaint about being hurt on the train, and that if she had done so he would have told the conductor about it.

Several physicians testified, as experts, as to the effect, result and permanency of the injury, two of them giving opinions over the objections of the railroad company, based upon the history of the case as related to them; one of them, Doctor Brown, when he was consulted by her for treatment shortly after the injury was alleged to have occurred, and the other, Doctor Jones, upon his examination, made after the suit was brought, and who treated her after Doctor Brown left the city.

Doctor Jones stated: "At the time of my first examination, February 13, 1912, the patient gave me a history of her case. She said she had never had any female trouble in her life, and had borne two children, and at that time their ages were eleven and three; had never had a miscarriage. On September 24, 1911, she had been jerked by the train. She said she got on the train at Oliphint, and that the train started with a jerk as she reached the top step. 'It snatched me,' she said. 'About five minutes later, I noticed a burning pain in the left side. This hurting went into the opposite side the following day, and the whole abdomen was very sore and tender.' Her menstruation, or monthly flow, started the following day and stayed five days. 'It came five days earlier than my time,' she said. Since the injury, her monthly flow lasts five and six days, whereas, before, it only lasted about three days. She suffers from painful menstruation ever since the injury; had never suffered before that time. She has suffered from leuchorrhoea since her injury, and she was never bothered with it be-

fore. She can not lift or stoop, her back hurts most of the time, standing or walking causes pains in her left side, and she has headache 'most every day.' '' From this history and diagnosis, the physician was permitted to state, over objections, reaching to his repetition of the statement of how the injury occurred, his opinion as to the cause of the trouble.

Doctor Brown, whom she claims to have consulted on the day of the injury, said he found her in his office lying on a lounge, and she gave him a history of the case, stating how the injury occurred, and that she seemed to be suffering pain at the time, and he found a slight discoloration upon the muscles of the left loin, and there seemed to be some inflammation there.

This testimony was also objected to, being based upon the history of the case given by appellee.

These physicians testified that the enlargement of the neck of the womb, the inflammation inside thereof, and the disease of the fallopian tube was attributable to, and resulted from, the blow and the injury received. Two other physicians testified that it was not possible to produce any such internal injury as was claimed resulted from the blow and bruises. That such conditions could not result from an external injury.

There was also testimony relating to the probable permanent disability of appellee and her earning capacity.

The court instructed the jury, and from the judgment on their verdict against the railroad company, it brings this appeal.

*E. B. Kinsworthy, Campbell & Suits* and *T. D. Crawford,* for appellant.

1. The court's instruction 8, on the measure of damages, was erroneous in that it left the jury to their opinion as to the amount they should award for bodily pain and suffering, instead of limiting their opinion or belief by the evidence, which they could not arbitrarily disregard. 105 Ark. 205; 93 Ark. 209.

2.   It was error to permit the medical experts to testify as to the cause of plaintiff's condition, based upon a history of her case as related to them by the plaintiff, herself.   184 Mo. 19; 203 Ill. 192; 35 Fed. 730; 4 L. R. A. (N. S.) 460; 88 Mich. 598, 16 L. R. A. 437; *Lee* v. *Kansas City Southern Railway Company,* in U. S. Court, Western District, Ark., Texarkana Division, ms. op. by Youmans, D. J.; 36 Ark. 124.

3.   Where the remarks of an attorney are of such character that their exclusion from the jury will not cure the injury done, a motion to exclude them need not be made, and the question as to whether they were improper may be presented on appeal.   2 Okla. Cr. 362, 102 Pac. 57; 4 Okla. Cr. 641, 111 Pac. 1002.

4.   The verdict is grossly excessive.   76 Ark. 193.

*Jones & Campbell,* for appellee.

1.   Instruction 8 was not erroneous.   The construction the jury would naturally put upon it would be that they should assess such damages for pain and suffering, if any, as they believed, or found, from the evidence to exist.   If there was any objection to the omission of the words, "from the evidence," after the word "believe," it should have been specially presented.   104 Ark. 327; 97 Ark. 409; 89 Ark. 522; 88 Ark. 16; 102 Ark. 640; 93 Ark. 209.

2.   There was no error in admitting the testimony of the medical experts.   104 Ark. 606; 55 Ark. 258; 1 Wigmore on Ev., § 668; 62 Pac. 747; 210 Ill. 508; 54 Ill. 485; 2 Jones, Law of Ev., § 352; 1 Greenleaf (16 ed.), § 430 l.; 135 Ia. 264; 132 Mass. 439; 48 Wis. 513; 6 Humph. (Tenn.) 347; 61 Am. Dec. (Ky.) 188; 16 Tex. Civ. App. 93; 11 Ark. 139; 5 Cyc. 613; *Id.* 608; 43 N. J. L. 86; 181 Mass. 202; 109 Cal. 673; 11 Cinc. Sup. Ct. 98; 18 Tex. Civ. App. 560; 48 Vt. 350; 61 Fed. 580.

3.   If there was any impropriety in the argument of counsel, it should have been objected to at the time.   Even if an objection had been made, the argument under the circumstances was not improper.   100 Ark. 221; 86 Ark. 607; 98 Ark. 93; 91 Ark. 93; 91 Ark. 576; 32 L. R. A. 145.

4. The damages awarded are not excessive. 101 Ark. 183; 88 Ark. 226.

Kirby, J., (after stating the facts). It is urgently insisted that the court erred in permitting the medical experts, Doctors Brown and Jones, to testify as to the cause of appellee's condition from a history of her case as related to them by her, and repeated by them to the jury, and with this contention we agree.

There was no testimony relating to the occurrence of the injury as claimed by appellee, except her own statement of it. All the employees of the railroad company on the train testified that the train stopped a reasonable length of time for the taking of passengers aboard; that there was no rough handling or unusual jerking of it, and that it did not start up and stop again, after stopping at first, as appellee claimed it did. The description of the occurrence of the injury, as related to these two physicians and by them to the jury, as part of the history of the case, upon which they based their opinions, necessarily resulted in bolstering up the statement of the appellee as to the occurrence of the injury. The jury might have inferred from it that she told the truth upon the stand, about receiving the injury, because she had related the occurrence to Doctor Brown, the first physician, in the same way on the day she said it was received, and to the next physician, Doctor Jones, thereafter. That since she had told it, alike each time to these physicians, as related by them to the jury, that it must be true.

Expert witnesses are not called to decide disputed questions of fact, but only to give opinions upon the matter upon which their opinions are sought that the jury may determine the question.

Mr. Jones, in his work on Evidence, second edition, section 349, says: "The declarations of the party to his physician, or to other persons, *as to the cause of the injury,* or those charging liability upon other persons, are not admissible when not made at the time of the injury. * * * The narration of *past occurrences,* for example,

the manner in which a party has been injured, are no more competent when related by a physician than when stated by a nonprofessional witness.''

In 5 Enc. of Evidence, p. 609, it is said: ''The rule which allows a medical expert to give a clinical history of the case, including what was told him by his patient, does not extend so far as to allow the witness to repeat what he was told as to how personal injuries were caused.'' See also Lawson, Expert and Opinion Evidence, page 176; Rogers, Expert Testimony, page 115; Wigmore, section 1722.

In *Ringelhaupt* v. *Young*, 55 Ark. 132, this court said: ''As to how the opinions of experts should be elicited and adduced as evidence, when the expert is not personally acquainted with the material facts in the case, Chief Justice Shaw, in delivering the opinion of the court in *Dickinson* v. *Fitchburg*, 13 Gray 546, 556, correctly stated the law as follows: 'In order to obtain the opinion of a witness on matters not depending upon general knowledge, but on facts not testified of by himself, one of two modes is pursued: Either the witness is present and hears all the testimony, or the testimony is summed up in the question put to him; and in either case the question is put to him hypothetically, whether if certain facts testified of are true, he can form an opinion and what that opinion is.' Thompson on Trials, sections 593, 595, and cases cited.''

In that case, the expert witness was allowed to give his opinion upon what he knew about the matter, because he did know the facts upon which it was based.

And in *St. Louis & S. F. Rd. Co.* v. *Fithian*, 106 Ark. 491, where it was claimed that the court had erred in permitting expert witnesses to answer hypothetical questions that did not include a material undisputed fact, a case where the witnesses were testifying as to the proper construction of a railroad track upon a curve from which a switch track led off at a different curvature, after an examination of the place after the train wreck and the injury had occurred, the court said:

"It was proper to permit the expressions of their opinion under the circumstances, and appellant could have tested their knowledge of the existing conditions and discovered whether this fact was taken into consideration by them in forming their opinions, if it had desired to do so, upon proper examination."

There is no question but that it would have been error to permit the relation, by the physicians, of the history of the case, including a statement of how the injury occurred, if it had resulted in the death of the appellee before the trial. It could not be considered part of the *res gestae,* and otherwise would have been only hearsay evidence, and not admissible. *Fordyce v. McCants,* 51 Ark. 509.

Testimony relative to the statements made by the injured person to his attending physician as to how the accident happened, and what caused it, is not admissible in a suit to recover for alleged negligent injury. It is but hearsay, when not a part of the *res gestae,* and the fact that it is recited by the physician to whom it was related as the history of the case when the injured person sought treatment for the injury, does not make it any the less so. *Halloway* v. *Kansas City,* 184 Mo. 19; *Federal Betterment Co.* v. *Reeves,* 4 L. R. A. (N. S.) 460; *Jones* v. *Portland,* 88 Mich. 598, 16 L. R. A. (N. S.) 437; *Lee* v. *K. C. So. Ry. Co.,* 206 Fed. 765.

In *Polk* v. *State,* 36 Ark. 124, this court said: "The proper course is to take the opinion of the expert upon the facts given in evidence; not as to the merits of the case, or the guilt or innocence of the prisoner, but as to the cause of the death, so that the jury may first determine whether any crime has been committed by any one at all. If the expert has been present, and heard all the evidence as to the symptoms and appearances, detailed upon the trial, he may give his opinions upon the facts so stated, *if they be found true by the jury,* but, can not, himself, judge of their truth. If he has not been present and heard them, they may be repeated to him, in the presence of the court and jury, and his opinion concerning

them required upon the same supposition of their truth. But, in either case, the opinion is upon a hypothetical state of affairs, and its value depends upon the view *the jury* may take of the truth of the facts, to which witnesses have sworn. It can not be based upon any facts which the expert may have heard outside, and may believe to be credible; and, if based upon his own knowledge of particular facts, he should, himself, detail the facts, and give his opinion thereon.''

In view of the fact that no witness corroborated the statement of the appellee as to the occurrence of the injury, and that the testimony of all the train crew tended to show that there was no stopping or starting of the train as she claimed at the time of the injury, and there was no complaint made by appellee, at the time, that she had been injured, it can not be said that her statement relating how the injury occurred to the physicians from whom she sought treatment for it as recited by them before the jury, as a foundation upon which to base an expert opinion as to the cause of the injury, was not prejudicial, notwithstanding the proof in the case as made by appellee showed the injury to have occurred in the same way. It was necessary for her to prove that she had been injured under such circumstances as would show negligence upon the part of the railroad company before any recovery could be had, and since this incompetent testimony tended to strengthen her case before the jury, it was necessarily prejudicial.

Other assignments of error are insisted upon, relative to the giving of an instruction upon the measure of damages, and also the excessiveness of the verdict, but it will not be necessary to pass upon them.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.