## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* WILLIAMS.

### Opinion delivered March 8, 1915.

RAILROADS—INJURY TO PASSENGER ENTERING TRAIN.—A carrier must exercise proper care not to move its train, which has stopped at a station to receive passengers, until the passenger has had a reasonable time to enter the coach; and when the train is negligently moved while the passenger, acting with reasonable diligence and ordinary care, is attempting to enter the coach from the platform, the carrier is responsible for the injury.

Appeal from Jackson Circuit Court; *R. E. Jeffery,* Judge; affirmed.

*E. B. Kinsworthy, Troy Pace* and *T. D. Crawford,* for appellant.

A railroad company is not guilty of negligence in starting its train as soon as a passenger gets on board, and before he has reached his seat. 6 Cyc. 613; 212 Pa. 29; 17 Col. App. 410; 50 S. W. 843; 102 Ky. 600. Where there was no evidence that the jerk or jar was other than

is usual in starting up a train, defendant was entitled to an instruction withdrawing the question of negligence as to such jerk of the train, from the jury.  72 S. W. 717.

A carrier is not responsible for injuries to passengers from dangers which are incident to railway travel, and which proper care and skill could not avoid.  49 S. W. 687; 37 Mo. 240; 2 L. R. A. 252; 2 Hutch., Car., § 900.

It was error to refuse defendant's tenth instruction. Risks of injury from jolts and jerks ordinarily incident to the movement of trains, are risks which the passenger assumes.  4 Elliott, Rds., § 1589; 74 S. W. 671; 76 S. W. 167; 14 S. W. 368; 68 S. W. 88.

The damages are excessive.  The injury to plaintiff could not have been produced by an external bruise, such as she received, and if she was infected in the manner claimed by her, it is such an unusual occurrence that it could not be anticipated.  69 Ark. 402; *St. Louis, I. M. & S. Ry. Co.* v. *Copeland.*  Defendant is not liable for consequences of its negligence which could not be anticipated or foreseen.

*Jones & Campbell,* for appellee.

Appellant was negligent in not holding its train long enough to give appellee reasonable time to enter the car. 73 Ark. 551; 101 Ark. 183; 105 Ark. 269; 99 Ark. 420; 95 Ark. 220.  The question of appellant's negligence in starting the train and plaintiff's contributory negligence was properly submitted to the jury.  76 Ark. 520; 90 Ark. 494; 89 Ark. 82; 87 Ark. 109; 83 Ark. 82.  A *prima facie* case of negligence on the part of the railway was established. 90 Ark. 485, and cases cited; 88 Ark. 12; 87 Ark. 581; *Id.* 308; 60 Ark. 550; 56 Ark. 594; 83 Ark. 217; 82 Ark. 393; 81 Ark. 579.

The testimony establishes the fact that plaintiff's injuries are serious and permanent.  The judgment is not excessive.

McCulloch, C. J.  This is an action against the railway company to recover compensation for injuries alleged to have been received by plaintiff while she was boarding defendant's train at Olyphant, Arkansas.  It is alleged in

the complaint that the servants of the company in charge of the train negligently caused it to start while plaintiff was boarding it and before she had time to enter the coach, and that on account of said negligence she was thrown against the hand rail and received serious injuries. Defendant entered a denial of the charge of negligence and contended that the plaintiff's physical condition at the time of the trial was due to disease which existed prior to the alleged time of the injury. There was a verdict in plaintiff's favor assessing damages in the sum of $5,000, and defendant appeals.

Plaintiff boarded the train at Olyphant on September 24, 1911, and rode to Newport. She testifies that when the train reached the station, it ran by a short distance, and that as soon as it came to a stop, she hurriedly approached the platform, and, with the assistance of the train porter, attempted to board the car. She states that the porter took her by the arm and lifted her up to the step, and about the time she reached the top step of the coach, the train was suddenly put in motion, which caused her to grab the hand-rail for support, and that the porter then signaled the train to stop, and that the movement threw her against the hand rail, injuring her side. She states that she did not discover the extent of her injuries until some time later, but when she reached Newport she went to a physician, and was treated by him for the injury. The case has been here once before on appeal, and was reversed on account of error of the court in permitting certain testimony to be introduced (108 Ark. 387).

The last trial of the case occurred in September, 1914, about three years after the injury is said to have occurred, and the physicians who examined her at the time of the trial testified that her present physical condition resulted from some kind of a violent blow, and that her condition was a serious one and was permanent. The physicians found serious injury to her womb and ovaries, and one of them testified that the only relief she could obtain would be through an operation in the removal of both the womb and the ovaries, and that this was a very serious operation which is only resorted to in extreme

cases. There is much testimony adduced by defendant tending to show that plaintiff's present condition resulted from disease of the genital organs which existed before the time of the alleged injury. In fact, the proof adduced by the defendant tends to show that the plaintiff did not receive any injuries at all, and that the incident she relates did not occur. These issues were, however, settled by the verdict of the jury, and all we are called upon to decide is whether or not the evidence was legally sufficient to sustain the finding of the jury. We think there was evidence sufficient upon every issue, and that the verdict should not be disturbed. If the injury occurred as related by plaintiff, it constituted negligence on the part of the servants of the railroad company; and if her testimony, and that of the physicians introduced by her as witnesses concerning the extent of her injuries, is true, the verdict for $5,000 damages is not excessive.

There are several assignments of error with respect to the rulings of the court in giving and refusing instructions. It is contended that the court erred in giving instruction No. 3 at the request of plaintiff, which reads as follows: "It is also the duty of the defendant company to stop its train at the station long enough to allow passengers to board and enter the car of the train, and it is the duty of the passenger to board and enter said train with reasonable dispatch, and it is negligence for the defendant company to start the train after it stops before the passenger has had a reasonable time to board and enter the train." The contention is that this instruction is in conflict with the principle laid down by the authorities that the servants of a carrier are not guilty of negligence in starting a train after a passenger has entered the coach, and before he has had time to reach a seat, "unless there is some reason to apprehend danger in so doing, or the movement is in a negligent manner." 6 Cyc. 613. We do not think the third instruction is in conflict with that principle, for it is evident that the court used the words "board" and "enter" as synonymous terms, meaning the same thing. There is nothing in the testi-

mony in this case which involves a duty to the plaintiff after she entered the coach and was seeking a seat. There is no contention that the plaintiff was inside of the coach when she received her injuries, but all that her testimony tends to establish is that she was injured while she was on the platform, and before she had time to enter the coach. Now, it is undoubtedly the law that a carrier must exercise proper care not to move the train until the passenger has had a reasonable time to enter the coach; and where the train is negligently moved while the passenger, acting with reasonable diligence and ordinary care, is attempting to enter the coach from the platform, the carrier is responsible for the injury. There is no testimony which would have warranted a submission of the question of negligence in moving the coach after the plaintiff entered the car, and it would have been error for the court to give any instruction on that subject, but the jury could not have understood this instruction otherwise than as relating to the charge of negligence in moving the train while the plaintiff was boarding it, and before she had had time to enter the coach. The issue was squarely presented whether or not the train was moved at all, and whether plaintiff received any injuries, and there was nothing in the language of this instruction which could possibly have misled the jury about what the real issue was.

The refusal of the court to give defendant's tenth instruction is also assigned as error. It reads as follows: "The employees, in operating the train, are not bound to stop the train at any particular place, and are not bound to start same without a jar or jerk, but are required only to exercise due care in this regard; and you are further instructed that the engineer had the right to move the engine and train forward; and if he did this in the usual way and with proper care and caution, the defendant would not be liable for plaintiff's injury, if she was in fact injured thereby, and your verdict will be for the defendant." This instruction was not applicable to the issue presented by the testimony, which was whether or not the train was prematurely moved before plaintiff

had time to board it, and while she was attempting to do so. That part of the instruction which stated to the jury broadly "that the engineer had the right to move the engine and train forward" is erroneous, inasmuch as the jury might have understood it to mean that the engineer had the unqualified right to move the train notwithstanding his duty to leave it stationary long enough to permit passengers to board the train. That part of the instruction is directly in conflict with other correct instructions on the subject, and for that reason, if no other, the court was right in refusing to give it. We find no error, therefore, in regard to the refusal of the court to give that instruction.

There are several other refused instructions which are urged as grounds for reversal, but upon an examination of those that were given, we find that the substance of these instructions was embraced in others which the court gave. Therefore, there was no prejudice in the court's refusal to repeat them.

The record is free from the errors which caused the former reversal, and we find that the case went to the jury upon correct instructions, and the evidence was sufficient to sustain the verdict.

Affirmed.