PLUNKETT-JARRELL GROCER COMPANY *v.* FREEMAN.

4-4194

Opinion delivered March 9, 1936.

*Gordon E. Young* and *Martin, Wootton & Martin,* for appellant.

*F. D. Goza* and *McMillan & McMillan,* for appellee.

MEHAFFY, J. This action was begun in the Hot Spring Circuit Court by the appellee to recover damages which he alleged were caused by the negligence of

the appellant. He alleged that he was driving a Ford roadster along the paved highway from Hot Springs to Arkadelphia and was about three and one-half miles from Hot Springs when a truck belonging to the appellant, which was being driven toward Hot Springs by one of appellant's employees, was carelessly and at a reckless rate of speed driven against and struck appellee's roadster, damaging the roadster, and causing injuries to the appellee by breaking his arm, middle finger, palm, wrist, forearm, and elbow in 10 places; that he suffered loss of blood, bruises, torn ligaments and muscles on the left side of his body, causing him physical and mental pain and anguish and disfigurement, and that his injuries were permanent.

The appellant filed answer denying all the material allegations in the complaint. The cause was tried by jury. There was a verdict and judgment in favor of appellee for $10,000. A motion for new trial was filed and overruled, and the case is here on appeal.

Appellant's motion for a new trial contains 21 assignments of error, but only three are argued in its brief. Since the other assignments of error are not argued, under our rules of practice they are deemed to have been waived or abandoned. *Reed* v. *State,* 103 Ark. 391, 147 S. W. 76; *Hurley* v. *Oliver,* 91 Ark. 427, 121 S. W. 920; *Commonwealth Public Service Co.* v. *Lindsay,* 139 Ark. 283, 214 S. W. 9; *Shawmutt Lbr. Co.* v. *Waites,* 122 Ark. 224, 182 S. W. 907; *Fitzhugh* v. *Leonard,* 179 Ark. 816, 19 S. W. (2d) 1010; *Austin* v. *J. R. Watkins Co.,* 185 Ark. 85, 46 S. W. (2d) 16.

The three assignments of error argued by appellant are, first, that the evidence is insufficient to support the verdict; second, that the court erred in giving instructions to the jury; third, that the verdict is excessive.

Ralph Plunkett, president of appellant, testified that the company operates 16 stores in the State of Arkansas, located at Little Rock, Hot Springs, Malvern, Hope, Ashdown, Nashville, Fordyce, Pine Bluff, and Stuttgart, and operates approximately 42 trucks. It is a matter of common knowledge that there is a paved high-

way from Little Rock to Texarkana, going through Arkadelphia. There is also a paved highway from Little Rock by way of Benton, where it leaves the Arkadelphia highway and goes to Hot Springs. There is a paved highway from Hot Springs to Arkadelphia. This highway connects the two above-mentioned highways.

August Lefler testified in substance that he is married, 32 years of age, and has lived in Arkadelphia since 1932, and in that year was operating a bus from Arkadelphia to Hot Springs; on August 10, 1932, Lefler was operating his bus on the highway. This was the date that the accident occurred. He left Hot Springs about 3:30 in the afternoon driving toward Arkadelphia on the paved highway, and saw the collision between the roadster driven by appellee, and truck which ran into it and hit him. He was about 100 or 125 yards from where the accident occurred. He testified that the truck was on the wrong side of the road, and after the accident the truck continued without stopping, and he saw as it passed him, that it was a Plunkett-Jarrell truck. The truck was dark-colored. He saw the appellee's car, which had been in the wreck. He was acquainted with appellee, but did not tell him that he saw the accident. He thought the case had been settled. On cross-examination he said that he operated on schedule, and the day of the accident they were scheduled to leave Hot Springs at 3:30 in the afternoon, but left about 15 or 20 minutes late and had an hour's delay with his car on the road: he knew the appellee two or three years prior to the accident, and had seen him often after the accident. He heard the collision, and the truck came past him toward town. The truck did not stop, and the accident made no particular impression on him. He knew of no serious trouble. When he went on he saw the roadster at Gilliam's Landing, and they were working on the roadster, and he recognized appellee at the time. Also a Mr. Dodson was a passenger. He did not know what damage had been done. Witness did not know about appellee's having filed suit, and after he found out the case had not been settled he did not want to go into court.

George M. Green, manager of appellant's branch in Hope, Arkansas, keeps a record to show where the trucks were on August 10, 1932, in the form of sale records for the day, and delivery by the trucks on their regular routes; he examined the records for his territory and his trucks were not in the vicinity of Hot Springs at that time; on that date they had no hauls from Little Rock, and their trucks were all confined to local deliveries. He testified that if any occasion had arisen to haul merchandise to his branch office from Little Rock, his trucks would not have used the Arkadelphia-Hot Springs highway, but would have passed by Malvern, which is 20 miles nearer. On cross-examination this witness testified that they hauled merchandise from Little Rock to their branch office, and he knew they went by Malvern because that was the straightest way, and because of the time they would consume; he was not familiar with the Hot Springs branch.

Tim Schultz, an employee of the appellant, is manager of the Hot Springs branch, and he testified that a record was kept of the trips made on August 10, and that on that date an accident did not happen to either of their trucks. He also testified that the furthest customer that he had on the road from Hot Springs to Arkadelphia was C. C. Batterson, whose business is located a mile beyond the end of the car-line, and that they did not make deliveries beyond Batterson's; that the injury occurred on Wednesday, and that they made deliveries to Batterson on Monday and Thursday, and served no other stores except Batterson's, between there and the river; that his records showed that on August 10 deliveries were made to the Oaklawn Race Track; he did not ride with the truck, but knew where the men went from what they reported, and he made his records from their reports; he has no way of telling if some driver drove a truck on the highway between Oaklawn and the river, but does not think they did because there was no occasion. Trucks from the Little Rock branch make deliveries to the Hot Springs branch weekly. He has never seen trucks from Malvern, Hope or other cities in Hot Springs. Appellant operates regular routes, one of which runs toward Little Rock, to Browes Station, two

**384**

miles. The other route toward Little Rock is made three times a week, on Monday, Wednesday and Friday, and August 10 was Wednesday. Men by the names of Robert Cheshire, Albert Howard and Roy James had driven trucks for Plunkett-Jarrell, but they did not deliver to Harris Mackey.

Luke Graves, another employee of appellant, testified that he was the driver of one of the trucks, and that on no occasion did he drive his truck beyond Batterson's store on the Hot Springs-Arkadelphia highway, nor did any one else. His truck was not where the accident occurred on August 10, and he did not have his truck beyond Batterson's store. He said the other truck was operated by Mack Wilson. Witness could not remember where he was on June 5, 1934, or August 8, 1933.

Mack Wilson, another employee of appellant, also testified that the Hot Springs branch operated two trucks, and in August, 1932, they delivered on Benton Street and Malvern Avenue. The other truck had another route; that he drove the Arkadelphia-Hot Springs highway as far as Batterson's store which is one mile from Oaklawn, and is the longest delivery on that route from Hot Springs. He did not deliver merchandise to Gilliam's Landing, nor beyond Batterson's store. He knows nothing of the accident which took place on August 10 in which a Plunkett-Jarrell truck collided with one driven by appellee. He never had an accident there, and it could not have happened without his knowledge. Gilliam's Dairy is about one mile and one-half beyond Batterson's. Witness testified that he never drove appellant's truck at any time except where orders were to be delivered, and the company's orders were obeyed by him. Does not know where he was on July 18, 1934, but knows he went to Batterson's store once a week. Made his regular run on August 10, 1932, and to Malvern Avenue that morning; he did not make a trip on the Arkadelphia highway; that if any trip was made on this highway he was the driver, and made a trip to Oaklawn on August 10.

Lloyd Alexander, another employee of appellant, testified that he was manager of appellant's branch at Malvern; that the trade territory from Malvern branch

extends from Point Cedar, Arkadelphia, Sparkman, Willow, Butterfield, Leola, Prattsville, Traskwood, and Bismarck. The Malvern trucks do not serve customers between Bismarck and Hot Springs. In going to Bismarck they take the road to Social Hill, which passes by Arkadelphia. They have customers there, but no customers from there to Hot Springs. The Malvern branch has three drivers. There is no reason for appellant's truck from Malvern to pass over the road from Bismarck to Hot Springs on company business. Sometimes his trucks coming back to Bismarck from Malvern, would go to the Caddo and come through Donaldson, which was a better way to Malvern.

Coy Linvall testified that he was shipping clerk and salesman at Malvern and would take orders for merchandise, and the company trucks would follow behind and make deliveries. His branch in 1932 did not sell merchandise to stores between Bismarck and Hot Springs, and they had no deliveries on the Hot Springs highway beyond Bismarck. This witness on cross-examination testified that the drivers are not supposed, in making deliveries, to return by Hot Springs, and if they did that, he did not know about it; that Mr. Beason, a driver, told that he had gone around back by Hot Springs, and Beason made two trips by Hot Springs; witness never went that way and is not familiar with the trucks and cars on the Hot Springs-Arkadelphia highway on August 10, 1932.

Doyle Jones testified that his route was from Poyen to Leola, and occasionally by Point Cedar, which was by Social Hill on the pavement to Bismarck. In August, 1932, the company did not supply any stores on the Hot Springs-Arkadelphia highway from Hot Springs to Bismarck. He testified also about the kind of trucks operated by appellant, and car operated by appellee, and said that one of the company's trucks could not be driven so that the left front wheel would hit a part of the car; that the appellant's truck would have hit the wheel of the other car before it hit the side.

Theo Bennings, another driver, testified that he had never had occasion to drive over the Hot Springs-Arkadelphia highway.

The appellee testified that he is a man of family, having five children from three to ten years old; has lived in Clark County all of his life; is 34 years of age; he then testifies about returning from Hot Springs to Arkadelphia and being hit by a truck and injured. After his injury the passenger took the wheel and drove to Gilliam's Landing, and then they went to Levi Hospital in Hot Springs, where he remained 29 days; suffered a great deal of pain. He testified about the appearance of the car or truck that hit him, and he was also asked about statements that he was alleged to have made to Mr. Lookadoo, Mr. Akers, and others, and about Mr. Lookadoo bringing a suit for him against a different company.

A letter was introduced which showed that appellee's wife had written to Mr. Bob Harris. There is quite a good deal of testimony, but all of the evidence shows that the truck which struck appellee was the kind of truck owned and operated by appellant. Lefler testified that he saw the name of appellant on the door, and appellant's witnesses testify that the name, as testified to by Lefler, was on all their trucks.

We do not set out the evidence as to how the accident and injury occurred because the facts with reference to this matter are not disputed. The appellant does not contend that appellee was not struck and injured by a truck in the manner described by him. Its contention is that the evidence is not sufficient to show that the truck belonged to it, or that it was in the control of one of its drivers.

Lefler was accustomed to traveling the Arkadelphia-Hot Springs highway, on which this injury occurred, and he testified that this was a Plunkett-Jarrell truck, that it had the Plunkett-Jarrell name on it. Appellant's witnesses testify that the trucks used by it are of the kind described by appellee's witnesses, and that the sign is on the door of all their trucks. Mr. Plunkett calls attention to the fact that on one occasion, when they sold a truck to International Harvester Company, and it sold it to a negro, that it still had the Plunkett-Jarrell name on it, but that he took steps immediately to have it taken off. There is no evidence anywhere in the record that

a truck belonging to any one other than the appellant has ever been used in that section with appellant's name on it. Appellant, as we have said, has 16 stores, and names nine of the places where the stores are located.

The evidence is undisputed that the trucks of the appellant were in constant use around Arkadelphia, Hot Springs, Malvern, Hope, and Nashville. There is no dispute about this, and there is no claim that trucks owned by any other persons with Plunkett-Jarrell's name on them ever traveled on these highways. It is true that the evidence of appellant's witnesses was to the effect that the truck drivers had certain routes; that they followed the route of the salesmen and delivered goods wherever sold on the route; but it is not claimed that anybody had any control over them, or gave them any directions as to the route they should go, and the undisputed evidence shows that on some occasions they would go different routes to the same place. The evidence shows that in delivering goods to Bismarck they would sometimes go by Donaldson, and sometimes go another route, and in delivering goods to Bismarck from Malvern, a glance at the map will show that it is practically the same distance to go by Hot Springs and travel the Hot Springs-Arkadelphia road to Bismarck, as it is to go by Donaldson.

Mr. Lindvall, salesman and shipping clerk in the employ of appellant at Malvern, testified, and this question was asked him: "So far as you know those men could have made deliveries out there, and might have come back by Hot Springs?" He answered: "As far as I know they might." He was asked if any of the truck drivers ever told him they had gone around by the lake and back by Hot Springs. He said Mr. Beason told them twice, and that two trips to his knowledge were made around by Hot Springs to Malvern. He also said that the drivers never told him which way they went except he knew that they occasionally came back through Hot Springs.

Another witness, when asked by appellee's counsel about using that particular road, was not permitted to answer. The appellant objected, and the court sustained

the objection, telling the appellee's attorney he should confine it to about the time of the accident.

Mr. Plunkett testified that all these trucks that are driven in various cities are driven by men employed by the company.

The evidence showed that the trucks used on that road, other than appellant's, were of a different color from appellant's trucks. Whoever was driving the truck did not stop after the accident, but proceeded, in violation of law, and the jury may have believed that the witness, if he testified, would not testify that he was about the place of the accident, because whoever was the driver of the truck, caused the injury by his negligence, and violated the law by running away from the accident. The rule is that the evidence of an interested witness is not considered as undisputed, although there may be no testimony contradicting him. It is a question for the jury whether he is telling the truth. Witnesses testified that appellee had made certain statements which were in conflict with his testimony at the trial. Appellee denied this.

It should be held in mind that the testimony of these witnesses was given a long while after the alleged conversations with appellee, and the evidence shows that one of these witnesses was in such condition that he probably did not know what appellee said, and the other witness did not contradict appellee. "It is a common experience of those dealing with human testimony that conversations are very imperfectly remembered, particularly where the exact language used is sought to be recalled after a considerable lapse of time, where the words spoken were of indifferent interest to the hearer, so that he would have no occasion to treasure them up in his memory, or where the statement was made in loose, casual or random conversation. In addition to this, testimony as to the admissions or other oral statements of a person not called as a witness is open to the objection that it is easily fabricated or the statement may have been imperfectly comprehended, wrongly interpreted or misunderstood by an honest reporting witness. For these reasons such testimony is regarded as

weak and even dangerous evidence, which should always be received with caution; and the distrust of this character of evidence has even found expression in statutes providing that testimony as to oral admissions should be scanned with care or requiring the court to instruct the jury that such testimony should be regarded with caution. It is, however, the province of the jury to weigh such evidence and give it the consideration to which it is entitled, and it may be sufficient to support a decision.'' 22 C. J. 290 *et seq.*

The credibility of the witnesses and the weight to be given to their testimony are questions solely for the jury, and proof of a fact does not have to be made by any particular kind or class of evidence, but the triers of fact may seek the truth within the field of the evidence to the utmost boundaries of reason, which rational men of common sense might set, without passing beyond the line between the field of probabilities and the field of conjecture. 23 C. J. 53.

Appellant calls attention to *Callas* v. *Independent Taxi Owners' Association,* 66 Fed. (2d) 192. The court in that case said: ''The president of the corporation called by the plaintiff as a witness of necessity, on cross-examination testified that the company did not own any cabs and never owned one, and that Schou had never been a member of the association. * * * But the charter of the company was in evidence, showing its authority to operate taxicabs. The car was operating as a taxicab at the time of the accident, bearing the peculiar colors and tradename of the defendant company; and consequently was legally presumed to be in the custody, and on the business of the person whose name it bore. Whether the effect of this presumption was overcome by the testimony of the president of the company that it did not own a cab, and his intimations that it was not in the cab business, was a question of fact for the jury, and consequently its decision as a question of law by the court, was error. So far as the liability of the defendant was concerned, the plaintiff's cause rested wholly upon a presumption. There was no direct evidence as to who was the owner of the truck that inflicted the injury, nor as to who was in

charge of it when the injury occurred. There was evidence, however, that the truck bore the name of the defendant company. This was sufficient to establish not only *prima facie* that the defendants were the owners of the truck, but also that it was then in charge of their servant or employee. This was presumptive evidence, and as has frequently been ruled, was quite sufficient to carry the case to the jury.''

In the instant case the evidence shows that the appellant owns 42 trucks, and 16 places of business; that it constantly delivers merchandise in those trucks, using the highways; that the truck was the kind of truck used by appellant, and had appellant's name printed on the door. There is no evidence that any other person or company used trucks like this to deliver merchandise in that section of the country. As said in the case just cited, it was a question of fact for the jury, and was sufficient evidence to establish the ownership of the appellant, and that it was being operated by its employee at the time of the accident.

Appellant next calls attention to *Arkansas Baking Co.* v. *Wyman,* 185 Ark. 310, 47 S. W. (2d) 45. The court in that case said: ''The evidence, when viewed in the light most favorable to the appellee, as we must do in determining its sufficiency, was such that minds of reasonable men might differ as to the cause of the injury, and we cannot set the verdict aside on this account.

''It is next insisted that there is no sufficient showing that the truck that caused the accident was appellant's property, was being used at the time of the accident in its business, or that the driver of the truck was in its employ, and that he was engaged in the business of appellant at the time of the accident. It is undisputed that the truck that caused the accident had appellant's name printed or painted thereon. It is further undisputed that this truck or a like truck bearing the name of appellant, traveled over this highway daily. The evidence further shows that a short time prior to the accident, while appellee and another were in Warren, they saw this same truck and the same driver who caused the

accident, delivering bread or other articles of merchandise to a customer in Warren.''

The court held that this evidence was sufficient to establish the fact that the truck belonged to the appellant, and that it was being operated at the time of the accident by its employee, and that this was sufficient to raise the inference that at the time of the accident he was acting within the scope of his employment, and in the furtherance of his master's business.

Attention is next called by appellant to *Spencer's Administrators* v. *Fisel*, 254 Ky. 503, 71 S. W. (2d) 955. In that case the court said: ''Where the evidence involves issues of fact about which fair-minded men might honestly differ as to the conclusion drawn therefrom, whether controverted or not, or if legitimate inferences thereupon tend to support the plaintiff's cause of action, or if the facts support his contentions, the issues should be submitted to the jury. Only when all facts and circumstances taken together fail to establish the plaintiff's cause of action, or the inferences that can reasonably be drawn therefrom fail to establish the case, it may be regarded the evidence was not sufficient to require the issues be submitted to the jury for determination.''

It is true that the evidence in this case is largely circumstantial, but facts may be established by circumstantial evidence as satisfactorily as by direct evidence. This court has said: ''According to the familiar rule, this court must give to these circumstances their highest probative value in favor of the appellee, and indulge every inference which is reasonably deducible from them, in support of the finding of the jury.'' *Pekin Wood Products Co.* v. *Mason*, 185 Ark. 166, 46 S. W. (2d) 798; *Gaster* v. *Hicks*, 181 Ark. 299, 25 S. W. (2d) 760.

''The settled rule which has been many times approved by this court, is that a well-connected train of circumstances is as cogent of the existence of a fact as an array of direct evidence, and frequently outweighs opposing direct testimony, and that issue of fact in controversy can be established by circumstantial evidence when the circumstances adduced are such that reason-

able minds might draw different conclusions.'' *Hanna* v. *Magee,* 189 Ark. 330, 72 S. W. (2d) 237.

Appellee calls attention to many authorities, all holding that in cases where there is no direct evidence as to who was the owner of the truck, but where the evidence shows that the truck bore the name of the defendant company, was a business truck, and engaged in the character of business that appellant was engaged in, that this is sufficient to establish not only that the defendants were the owners of the truck, but it was also then in charge of their servant or employee. We do not discuss these cases because we think this court has settled this question beyond controversy.

Appellant next urges that this cause should be reversed because the court gave instruction No. 6 requested by the appellee. That instruction reads as follows: ''If you find from the evidence that the truck which injured the plaintiff belonged to the defendant, Plunkett-Jarrell Grocer Company, and that the defendant operated its truck over this highway for the purpose of making deliveries to its customers, then from these facts a presumption arises which, if unexplained, justifies you in finding that at the time of the collision the truck was being operated for the defendant's benefit.''

Appellant's first objection to this instruction is that there was no evidence that the truck belonged to the appellant, or that appellant operated its trucks over that part of the highway where the accident occurred, for the purpose of making deliveries to its customers.

We do not agree with appellants in this contention. We think there is substantial evidence to sustain the verdict of the jury finding that this was appellant's truck, and that it operated over this highway for the purpose of making deliveries to its customers.

Appellant's next objection is that there is no evidence that defendant's trucks made deliveries in the vicinity of the accident. We think the inference that it did deliver goods in this vicinity is supported by the circumstances.

It is next contended that the damages are excessive. The appellee is 34 years old. At the time of his injury

he was engaged in operating a sawmill. He was earning from $3 to $5 a day, and his expectancy was approximately 36 years. His arm was broken in a number of places. Some of the fractures were compound fractures, with bones protruding from the flesh. The elbow is so injured that it is of no service to him whatever. He was confined to the hospital for 29 days, suffered pain considerably for five or six months, is permanently injured and totally disabled from carrying on his work. The verdict was for $10,000, and we do not think, when all the facts and circumstances are considered, that this was excessive.

The judgment is affirmed.

BAKER, J., not participating.

McHANEY, J., (dissenting). I regret that I cannot agree with the majority in this case, for I am of the opinion that the evidence, viewed in the light most favorable to appellee, as we are required to do, is not sufficient, under our previous holdings, to fix liability on appellant. The vital question in the case is: was the truck that struck and injured appellee owned by appellant and operated at the time by its employee in its business? The appellee did not know whose truck it was, did not know who the driver of it was and at first thought it was a yellow truck. He thought it was a yellow truck so strongly that he employed counsel who brought an action for him in the Garland circuit court against the Shell Petroleum Company in which he sought damages in the sum of $3,000 for his injuries. He says his uncle did this but it was done with his knowledge and consent. Buck Dodson who was riding in the roadster with appellee at the time of his injury testified it was a yellow truck with a bed on it, the kind used for hauling gas tanks, and looked like it had a tank on it and an overhanging body where five-gallon cans can be placed on the side of the oil tank. It is conclusively shown that appellant does not own any yellow colored trucks.

One witness for appellee, Lefler, testified that he saw the accident and that the truck that struck appellee passed him on the highway. He was asked whose truck

it was and answered: "Plunkett-Jarrell Grocery truck. I seen the sign on the door." And that it was 1½-ton truck with a stick body and a tarpaulin. This was all the evidence tending to show that it was appellant's truck that struck appellee. No witness undertook to say who the driver was or that the truck and driver were on any business for appellant. Forgetting for the moment the proof on behalf of appellant, conclusive to my mind, that it had no truck on that highway on the date of the injury further out of Hot Springs than Batterson's store, some two miles from the scene of the accident, and that its truck was not involved in same, and assuming that Lefler's testimony is sufficient to take the question of the ownership of the truck to the jury, still there is no proof as to who the driver was, whether an employee of appellant or not, or whether, if an employee, he was about his master's business, or on a mission of his own. We have never held bare proof of ownership of the car is sufficient, and no case will be found in our reports to that effect. Suppose a thief had stolen appellant's car, had the accident and returned the car, or suppose the driver had loaned it to a friend to go on a mission of his own. It seems to me that ownership and relation of employer and employee, master and servant, or principal and agent, must be shown. Then a rebuttable presumption of fact arises that the car was operated in the master's business. In *Terry Dairy Co.* v. *Parker,* 144 Ark. 401, 223 S. W. 6, there was no dispute about the ownership of the truck. Appellant not only owned the truck but paid the license on it. The question in dispute was, not the identity of the driver, but whether he was an employee or an independent contractor. This question was held to have been properly submitted to the jury, and it was held that since it was appellant's truck and, as found by the jury, operated by his employee: "This was *prima facie* evidence, at least, that the truck was being operated for appellant at the time appellee was injured." Also in *Mullins* v. *Ritchie Grocer Company,* 183 Ark. 218, 35 S. W. (2d) 1010, there was no question about the ownership of the car, nor as to who the driver was or whether he was

an employee of the appellee. The court said: "Lewis, a salesman and collector for the Ritchie Grocer Company, was furnished an automobile by the company to use in the furtherance of his master's business. He was in the general employ of the master and was allowed the exclusive use and control of the automobile. The accident happened on a week day; and, under the authorities above cited, this made a *prima facie* case in favor of appellant upon proof of negligence. The negligence of Lewis was proved, and, in fact, was conceded by counsel for appellee. The *prima facie* case made by proof of the facts stated was not overcome merely by proof that Lewis, by the terms of his employment, was not required to work on Saturday. Such evidence was a circumstance only tending to show that he was not acting in the course of his employment at the time the accident occurred. Neither can it be said that the fact that the accident occurred at eleven o'clock, which was after usual business hours, *overcomes* or defeats the *prima facie* case made by appellant. It is a matter of common knowledge that servants in the discharge of their duties often are delayed or prevented from completing their work during usual business hours. In the present case, the fact that the order blanks of the company were in the car was a circumstance, however slight, it might be deemed by the jury, tending to show that Lewis was in the furtherance of the business of the company at the time the accident occurred. See *Duckworth* v. *Stephens,* 182 Ark. 161, 30 S. W. (2d) 840."

The same thing is true as to *Casteel* v. *Yantis-Harper Tire Co.,* 183 Ark. 912, 39 S. W. (2d) 306, and *Arkansas Baking Co.* v. *Wyman,* 185 Ark. 310, 47 S. W. (2d) 45. A mere reading of these cases shows they are not authority for appellee in this case.

Here, the only proof is that a truck having appellant's name on the door struck appellee. We are asked to presume from that not only that it was appellee's truck, but that it was being operated by its employee on its business. Before I can give my consent to take $10,-

396

000 away from appellant and give it to appellee, something more must be shown.

I respectfully dissent and am authorized to say Mr. Justice SMITH concurs with the views here expressed.