1048                                              [241

T.I.M.E. Freight, Inc. v. Rual Wayne McNew et al
5-4079                                         411 S. W. 2d 500
Opinion delivered February 20, 1967

1.  AUTOMOBILES—INJURY FROM OPERATION—IDENTITY OF OWNERSHIP
    OF VEHICLE.—Plaintiffs' testimony, standing alone, was sufficient
    to support a finding that defendant's tractor-trailer caused the
    accident and was being driven by one of its drivers in the
    course of his employment.

2.  AUTOMOBILES—INJURY FROM OPERATION—PRESUMPTION & BURDEN
    OF PROOF.—Plaintiffs' failure to prove the whereabouts of the
    100-odd trailers belonging to defendant that were on interchange
    the day of the accident was not fatal to their prima facie case
    in view of the evidence.

3.  TRIAL—VERDICT & FINDINGS—REVIEW.—Where, with an explana-
    tion of the whereabouts of the interchange trailers, the question
    for the jury would have been essentially the same as at trial—
    weighing probabilities and credibility—the case was properly
    submitted to the jury, whose verdict settled the controversy.

Appeal from Faulkner Circuit Court, *Russell Roberts*, Judge; affirmed.

*Wright, Lindsey & Jennings*, for appellant.

*Guy H. Jones* and *Francis T. Donovan* and *A. B. "Rob" Dawson*, for appellee.

GEORGE ROSE SMITH, Justice. This appeal challenges a verdict and judgment holding the appellant responsible for a head-on collision that occurred on the night of March 11, 1965, on Highway 65 in the city of Conway. T.I.M.E. contends that it was entitled to a directed verdict, for the reason that the appellees' evidence failed to prove that a T.I.M.E. tractor-trailer unit was involved in the collision.

The collision took place on a four-lane highway having two lanes of traffic in each direction. Two cars, one being driven by the appellee McNew and the other by the appellee Bunting, were approaching each other in the inner lanes of traffic. According to the appellees' proof a tractor-trailer rig bearing the letters T.I.M.E. on the back of the trailer was traveling next to Bunting, in the outer lane of traffic to his right. The collision was caused by the negligence of the truckdriver, who at-

tempted to pass a truck ahead of him and in doing so side-swiped the Bunting vehicle and knocked it into the path of the oncoming McNew car. Mrs. McNew was killed and the other occupants of the two cars were injured. The jury verdicts for the appellees totaled $33,200.00.

The truckdriver in question was never identified, for he did not stop after the accident. Nevertheless, the plaintiffs (with whom we align the cross-complainants) offered proof ordinarily sufficient to support a verdict against the defendant. Both occupants of the Bunting car testified that the name T.I.M.E. was painted on the back of the trailer. Another witness, apparently disinterested, testified that a few minutes before the collision three tractor-trailers bearing the letters T.I.M.E. on both tractor and trailer were parked at a nearby truck stop. According to that witness, who arrived at the scene of the collision soon after the tragedy occurred, the three T.I.M.E. drivers left the truck stop and drove off in the direction of the accident at about the right time for one of them to have been involved. Under our earlier decisions the testimony just summarized, standing alone, would support a finding that a T.I.M.E. tractor-trailer caused the accident and that it was being driven by a T.I.M.E. driver in the course of his employment. *Lion Oil Ref. Co.* v. *Smith*, 199 Ark. 397, 133 S. W. 2d 895 (1939); *Plunkett-Jarrell Gro. Co.* v. *Freeman*, 192 Ark. 380, 92 S. W. 2d 849 (1936); *Arkansas Baking Co.* v. *Wyman*, 185 Ark. 310, 47 S. W. 2d 45 (1932).

The appellant argues that its proof overcame the appellees' prima facie case. T.I.M.E. is a comparatively large concern operating its vehicles from 29 different terminals scattered over the United States. On the date of the collision it owned about 1,100 trailers and about 500 tractors. At least nine of its units (and perhaps as many as 36) might have been in the vicinity of Conway at the time of the accident. Seven of those nine drivers testified at the trial, each one denying that he was implicated in the collision. By an oversight on T.I.M.E.'s part the other two drivers were not mentioned in its an-

swers to the plaintiffs' interrogatories and were not called as witnesses.

In insisting that it was entitled to a directed verdict T.I.M.E. relies upon proof that about ten per cent of its trailers were in the possession of other trucking companies on the date of the accident. Such transfers of possession are referred to as interchanges. An interchange occurs when a shipment originating with T.I.M.E. is turned over to a carrier authorized to serve the point of destination. In such a situation the necessity for unloading and reloading the shipment is avoided by releasing the loaded T.I.M.E. trailer to the connecting carrier. In a transaction of that kind T.I.M.E. takes a receipt for its trailer and makes a daily charge of $10.00 for the use of the vehicle. At the trial neither side made any attempt to prove the whereabouts of the 100-odd trailers that were on interchange on the day of the accident.

Laying aside T.I.M.E.'s much better opportunity to trace the missing trailers, we are unwilling to say that the plaintiffs' failure to develop that line of inquiry was fatal to their prima facie case. Their testimony placed at least three T.I.M.E. tractor-trailer units at a point close enough to the site of the collision to support a finding that one of them was involved. Moreover, only about ten per cent of the T.I.M.E. trailers were on interchange; so the probabilities were about nine to one that if a T.I.M.E. trailer was actually involved it was being hauled by a T.I.M.E. tractor.

The ultimately decisive question is whether some explanation of the whereabouts of the interchanged trailers was so essential to the plaintiffs' case that the jury could not fairly and reasonably reach a conclusion without that explanation. We have no hesitancy in holding that the asserted gap in the plaintiffs' proof was not fatal to their causes of action. In no event could the plaintiffs have done more than track down the drivers of the unaccounted-for trailers, produce all of them as witnesses, and submit to the jury a hundred or more monotonously similar denials of their participation in

the accident. Yet that mass of testimony, even though it proved to be as favorable as possible to the plaintiffs, would not carry the jury far in its deliberations. The guilty truckdriver failed to stop after the collision. It is altogether unlikely that one of the missing drivers, when discovered weeks or months later, would voluntarily admit that he was the culprit who fled from the scene. Thus the question for the jury would have been essentially the same as it was at the actual trial—a matter of weighing probabilities and credibility. Mathematical certainty could not be achieved. In the circumstances the court properly submitted the case to the jury, whose verdict settles the controversy.

Affirmed.

BROWN, J., dissents.