TEXAS MOTOR COMPANY *v.* BUFFINGTON.

Opinion delivered May 20, 1918.

1. AUTOMOBILES—INJURY TO PEDESTRIAN—USE OF STREETS.—Automobilists and drivers of other vehicles share the streets with pedestrians, but they must anticipate the latter's presence and exercise reasonable care to avoid injuring them. Care, commensurate with the anticipated danger, must be exercised. Ordinary care for one's own safety and for the safety of others is, in the absence of a statute prescribing definite regulations, the legal measure of duty applicable to all persons who use public streets, either as pedestrians or in driving automobiles or other vehicles.

2. AUTOMOBILES—NEGLIGENCE—DUTY TO KEEP LOOK-OUT AND SOUND HORN.—Where the circumstances are such that reasonable minds might draw different inferences on the question, it is not, as a matter of law, negligence *per se* for the driver of an automobile to fail to keep a look-out, or to fail to sound a warning.

3. AUTOMOBILES—INJURY TO PEDESTRIAN—SPEED OF CAR.—In an action for damages for personal injuries caused by an automobile striking a pedestrian, when backing in a public street, it is erroneous to instruct the jury that the defendant is liable, where the instruction omits the issue of the speed of the car as the proximate cause of the injury.

Appeal from Miller Circuit Court; *Geo. R. Haynie,* Judge; reversed.

*Webber & Webber,* for appellant.

1. Improper, incompetent and prejudicial testimony was offered in evidence. Testimony as to certain contributions or payments to plaintiff, and as to liability or indemnity insurance held by defendant was inadmissible and the offer was prejudicial. 104 Ark. 1; 114 *Id.* 542.

2. There was error in the plaintiff's instructions. No. 1 told the jury that the failure of the driver to look to see if there was any person in the street before moving his car was negligence *per se.* This was error. Only ordinary care was required of the driver to prevent injury and a pedestrian in the public streets must exercise ordinary care for his own safety. 97 Ark. 469; 102 *Id.* 351; 42 L. R. A. (N. S.) 1178.

3. Failure to sound the horn was not negligence *per se.* The second instruction was not the law. 127 Ark. 279; 116 *Id.* 125; 41 L. R. A. (N. S.) 337; 63 L. R. A. 668.

4. The third instruction was without evidence to support it. 70 Ark. 441. The fourth was abstract. *Ib.*

5. No. 4½ assumes that it was negligence for the driver to back the car into the street. A pedestrian must use ordinary care for his own safety. 97 Ark. 469; 102 *Id.* 351.

6. The fifth was error. It told the jury as matter of law that the driver was bound to anticipate the presence of pedestrians in the streets. The only duty imposed on him was the exercise of *ordinary care* to see and avoid injury to them. 98 N. E. 369. The sixth was also erroneous.

7. There was error also in refusing defendant's instructions. Plaintiff was clearly guilty of contributory negligence and the driver used ordinary care. 133 N. Y. Supp. 743, 120 *Id.* 883; 121 Pac. 983; 140 *Id.* 586, etc. See also 42 L. R. A. (N. S.) 1178, 1181; 76 N. E. 224; 51 L. R. A. (N. S.) 989.

8. The damages were excessive. Plaintiff has once before been injured and his condition was not caused solely by the last injury.

*G. G. Pope* and *Will Steele,* for appellee.

1. No improper evidence was admitted. The evidence complained of was excluded. 117 Ark. 579; 198 S. W. 94.

2. The law of Texas governs this case. 98 Ark. 256; 104 *Id.* 327. Under the law of Texas it was the duty of the driver to look and give warning. Acts 1917, 479 Texas.

3. There is no error in the instructions. They state the law. 110 Ark. 414; 78 *Id.* 22; 88 *Id.* 444; 93 *Id.* 599; 99 *Id.* 597; 81 *Id.* 15; 197 S. W. 710; 88 *Id.* 250; 103 *Id.* 374; 118 S. W. 215; 159 *Id.* 915; 109 Ark. 575; 118 *Id.* 507; 97 *Id.* 472; 102 *Id.* 355; 94 *Id.* 251; 179 S. W.

860; 98 Atl. 1063; 99 Ark. 259; 78 *Id.* 431; 29 Cyc. 516; 72 Ark. 572; 129 *Id.* 568; 102 *Id.* 354, etc.

4.   Defendant's instructions were properly refused. 102 Ark. 351. They were covered by others given. 101 *Id.* 120; *Ib.* 569; 108 *Id.* 429.

5.   The damages are not excessive.  94 Ark. 270; 121 *Id.* 360; 88 *Id.* 225.

6.   Negligence is admitted, and there was no contributory negligence by appellee. There is no reversible error. The instructions are full and fair, and there is no error.

McCULLOCH, C. J.  The plaintiff, W. F. Buffington, instituted this action in the circuit court of Miller County to recover damages on account of injuries alleged to have been sustained through the negligence of defendant, The Texas Motor Company. The charge of negligence is that one of the officers of defendant backed a car out of a garage into a public street in the city of Texarkana and knocked the plaintiff down, thereby inflicting serious injuries to the person of the latter.

It is charged that the automobile was backed out into the street at a high rate of speed without any warning signal being sounded and without any effort on the part of the driver to ascertain the presence of persons in the street. The defendant denied the alleged act of negligence and asserted that plaintiff's injuries, if he received any at all, were caused by his own act of negligence in attempting to cross the middle of the block and in failing to exercise ordinary care to prevent the car from striking him. The trial of the case before a jury resulted in a verdict in favor of the plaintiff awarding a very substantial amount of damages.

The collision occurred on State street in Texarkana, Texas, at a point in the middle of a certain block where an automobile garage fronts upon the street. The car driven by Anthony, one of the officers of defendant corporation, was backing out of the entrance of the garage when the rear end of the car or the rear fender struck plaintiff and knocked him down as he was crossing the

street. There is a conflict in the testimony as to whether the machine was backed out of the garage or merely backed out of the entrance. The plaintiff testified that when he started across the street he looked in each direction, but could not see any car, and his statements, if believed, would warrant the conclusion that the car was inside of the garage at that time. On the other hand the testimony adduced by the defendant was to the effect that the car did not enter the garage at all, but was turned into the entrance for the purpose of obtaining a supply of gasoline and was backed a few feet in order that the nozzle of the gasoline hose could be connected with the tank of the car. Plaintiff's own testimony was, in substance, that he turned diagonally across the street at a point near the entrance of the garage and looked up and down the street for automobiles and other vehicles, and that when he got near the middle of the street the car driven by defendant's agent struck him and knocked him down. He testified that he did not see the car until he was struck by it. The garage where the injury occurred was owned and operated by a Mr. Anderson, and was known as Anderson's Garage. There appears to have been no connection between the defendant company and the Anderson Garage, and Anthony, the driver of the machine in question, merely stopped at the garage to obtain a supply of gasoline. The gasoline filling station was located near the curb on the left side of the entrance and could be approached either by stopping the car on the side of the street or turning into the entrance.

According to the testimony of several witnesses introduced by the defendant, the machine was not run into the garage at all, but was turned into the entrance for the purpose of stopping at the gasoline station. According to that testimony, the driver in turning into the entrance ran the car a little too far to admit of connecting the gasoline hose with the tank, the front wheels of the car being stopped about the edge of the sidewalk in front of the entrance. Anderson was standing at the tank at that

time for the purpose of delivering the gasoline and another man who had come up in the car with Anthony was standing on the other side of the entrance. The car was backed only four or five feet, according to the testimony of defendant's witnesses, and the rear fender struck plaintiff and knocked or pushed him down. Plaintiff testified that he was violently knocked down, but defendant's witnesses testified that he was pushed down or merely "sat down," using the exact language of the witnesses. There is a sharp conflict in the testimony as to the distance the automobile was backed, as well as to the speed. According to plaintiff's testimony, the machine was backed about nineteen feet out into the street, whereas defendant's testimony shows that it was only backed about four or five feet. Plaintiff testified that the horn was not sounded, and there was no testimony to contradict him on that point. Anthony testified that when he backed his car he looked around on the left side of the car and did not observe any one in sight. He stated that he did not look back through the rear windows of the car, nor did he look backward on the other side of the car. Anderson testified that he was looking when the collision occurred, and that the plaintiff was walking toward the car as it backed out, and that he called out in alarm, but that plaintiff continued his course.

(1) It is clear that the testimony introduced in the case presented issues to be submitted to the jury as to the negligence of defendant's agent in backing the car into the street without warning, or without exercising proper care to discover the presence of plaintiff, and at an excessive rate of speed, and also as to contributory negligence of plaintiff himself in failing to exercise ordinary care to avoid injury. The evidence was legally sufficient to support a finding either way on those issues. The law of the case has been settled in several decisions of this court defining the relative rights and reciprocal duties of persons using public highways as pedestrians or in operating automobiles and other kinds of vehicles. *Millsaps* v. *Brogden,* 97 Ark. 469; *Minor* v. *Mapes,* 102 Ark. 351; *Butler* v. *Cabe,* 116 Ark. 26; *Fleming* v. *Oates,*

122 Ark. 28; *Russ* v. *Strickland,* 130 Ark. 406, 197 S. W. 709. We have stated the rule on the subject as follows:

"Automobilists and the drivers of other vehicles have the right to share the street with pedestrians, but they must anticipate the presence of the latter and exercise reasonable care to avoid injuring them. Care must be exercised commensurate with the danger reasonably to be anticipated." *Minor* v. *Mapes, supra.*

Ordinary care for one's own safety and for the safety of others is, in the absence of a statute prescribing definite regulations, the legal measure of duty applicable to all persons who use public streets, either as pedestrians or in driving automobiles or other vehicles. *Fleming* v. *Oates, supra.*

(2) The instructions given by the court over the objections of the defendant were not in accord with these principles, for the reason that they stated the law to be that the failure of the driver of the car to look for pedestrians or to sound a warning constituted negligence on account of which the plaintiff was entitled to recover damages. Those instructions told the jury in effect that the failure of Anthony to keep a look-out for pedestrians and to sound the horn as a warning constituted negligence *per se,* and this was an incorrect declaration of the law on the subject. Instructions numbered 1 and 2 were each open to this objection. Of course, there might be circumstances established in a case by undisputed evidence which would make the failure of an automobile driver to keep a look-out or to sound the horn negligence *per se,* and the court would be justified in such case in so declaring the law to the jury. But, where the circumstances are such as reasonable minds might draw different inferences on the question, it was improper to tell the jury that it constitutes negligence for a driver of a car to fail to keep a lookout or to fail to sound the horn. The correctness of the instructions must, of course, be tested by the testimony adduced by the defendant, for the jury might have found the facts which that testimony tended to establish. In

other words, the jury might have found, as stated by defendant's witnesses, that the car was backed a distance of only four or five feet, at a very low rate of speed, and in the presence of two other persons who were in full view so as to be able to give warning either to the driver or to a pedestrian. Under those circumstances the jury might have drawn the inference that ordinary care did not require the driver either to look or to sound the horn before backing the car so short a distance.

(3)  Instruction No. 3, given by the court, was also erroneous in telling the jury that the verdict should be for the plaintiff if it was found "that said automobile was being backed at a greater rate of speed than a person of ordinary prudence would have done, taking into consideration the location of the garage, the pedestrians ordinarily passing along the street and across said street, and the general traffic across and along the street where the automobile was backed." The instruction was erroneous in omitting all consideration of the speed of the car being the proximate cause of the injury.

Other instructions subject to the same criticism were given, but it is unnecessary to discuss them all, the general theory upon which the case should have been submitted to the jury having been stated so as to afford a guide for the court at the next trial of the case. The instructions of the court are also open to the objection that they exclude consideration of the issue as to contributory negligence of the plaintiff, and they authorize the jury to find for the plaintiff regardless of his own negligence contributing to the injury.

What we have said is based on the general law on the subject without reference to any particular statutory regulations, but it is contended that in the State of Texas, where the injury occurred, there are specific statutory regulations which change the law with respect to the duties of the driver of a car. The statute brought to our attention does not, we think, change the law herein

stated.    The following sections of the Texas statute (Acts of 1917, pages 476-479) read as follows:

"Sec. 7.    Signals:  Every  motor  vehicle  shall  be equipped with a bell, gong, horn, whistle or other device in good working order, capable of emitting an abrupt sound adequate in quality and volume to give warning of the approach of such motor vehicle to pedestrians and to the rider or driver of animals or of other vehicles and to persons entering or leaving street, interurban or railroad car.    Every person operating a motor vehicle shall sound said bell, gong, horn, whistle or other device whenever necessary as a warning of danger, but not at other times or for other purposes."

"Sec. 16.    Rules for Operation of Vehicles on Public Highways: (a) The driver or operator of any vehicle in or upon any public highway in this State shall drive or operate such vehicle in a careful manner with due regard for the safety and convenience of pedestrians and all other vehicles or traffic upon such highway, and whenever practicable shall travel upon the right hand side of such highway.   *   *   *   (k)  The person in charge of any vehicle in or upon any public highway before turning, stopping, or changing the course of such vehicle, shall see first that there is sufficient space for such movement to be made in safety, and if the movement or operation of other vehicles may reasonably be affected by such turning, stopping or changing of course, shall give plainly visible or audible signal to the person operating, driving or in charge of such vehicle of his intentions so to turn, stop or change said course; (m) Every motor vehicle when moving along such portion of the road where the curvature of the road or highway prevents a clear view for a distance ahead of one hundred yards, shall be held under control. and the operator thereof in approaching curves or sharp turns in the road shall give a warning by his gong or other adequate signaling device."

Section 7 relating to signals does not, it will be seen from reading the section, impose an absolute duty to give the signal under all circumstances, but merely

declares the duty of the driver to do so "whenever necessary as a warning of danger" and prohibits the giving of the signal "at other times or for other purposes." The statute leaves it to be determined in a given case whether or not it is necessary for the driver to give warning. Section 16, prescribing regulations for the operation of automobiles, has no application to the present case, except to impose the duty of ordinary care for the protection of other persons using the highway.

We find nothing in these statutory regulations which change the law so far as applicable to the facts of the present case.

It is unnecessary to discuss other assignments of error based upon the rulings of the court which may not occur in another trial, but for the errors indicated, the judgment will be reversed and the cause remanded for a new trial.