MURPHY *v.* CLAYTON.

Opinion delivered March 25, 1929.

226

228

*Henry Stevens,* for appellant.

*Paul Crumpler* and *McKay & Smith,* for appellee.

HART, C. J., (after stating the facts). The first assignment of error is that the evidence is not legally sufficient to sustain the verdict. Under this assignment of error it becomes necessary to consider the question

of the defendant's negligence and of the plaintiff's contributory negligence. Drivers of automobiles and pedestrians both have a right to the street, but the former must anticipate the presence of the latter, and exercise reasonable care to avoid injuring them. Care must be exercised commensurate with the danger reasonably to be anticipated. What is ordinary care is a relative term dependent upon the facts and circumstances of each particular case. The question of contributory negligence is one for the jury whether the pedestrian, in crossing the street at an established crossing, has exercised such care as a person of ordinary prudence would exercise for its own safety under the circumstances. *Millsaps* v. *Brogdon,* 97 Ark. 469, 134 S. W. 632, 32 L. R. A. (N. S.) 1177; *Minor* v. *Mapes,* 102 Ark. 351, 144 S. W. 219, 39 L. R. A. (N. S.) 214; *Texas Motor Co.* v. *Buffington,* 134 Ark. 320, 203 S. W. 1013; *Gates* v. *Plummer,* 173 Ark. 27, 291 S. W. 816.

In the last case cited it was expressly held that the facts proved by the plaintiff were sufficient to take the question of the defendant's negligence and the plaintiff's contributory negligence to the jury. The plaintiff was an eleven-year-old boy, and the court held that, in determining his contributory negligence in attempting to cross a highway in front of an approaching automobile, he should be held to exercise the care and prudence of a boy of that age, and cannot be expected to exercise the same care that an adult should under the same circumstances.

According to the contention of counsel for the defendant, this is a case where a child suddenly darted out in the street from in front of a parked car, without warning, and defendant struck her with her car, after doing all in her power to check the speed of the car after seeing the plaintiff. Such a finding on the part of the jury would have been conclusive on appeal, but we do not think that the case can be regarded "wholly as a darting-out case." It is not a case where a child was

in a place of safety on the sidewalk and made no movement to leave until the automobile was so close upon it that it could not be stopped when the child ran out in the street.

According to the evidence adduced by the plaintiff, the defendant's car was going east at the rate of twenty or twenty-five miles an hour, at the time of the accident. Another witness for the plaintiff testified that the car was going fast, and this attracted her attention. It was at the noon hour, and the grammar-school children were accustomed to cross the street there in going to lunch. The view of the driver of the car was not obstructed except by the car of Mr. Talley, which was parked on the north side of the street, facing east, and which was the direction in which the defendant's car was going. Some of the witnesses for the plaintiff say that she was lying in the street on the south side after she was struck. Other witnesses say that the car of the defendant was on the right-hand, or south, side of the street at the time of the accident. The plaintiff was on the right, or south, side of the defendant's car when it hit her. According to the evidence of Mr. Talley, the plaintiff was about twenty feet from his car when he picked her up. He did not see the child pass in front of his car. The child was to his right and a little southwest of his car when he picked her up. Other witnesses for the plaintiff stated that the defendant's car was going fast at the time it struck the plaintiff. One of the schoolboys testified that the plaintiff was about fifty steps from Talley's car when the automobile struck her.

Of course all this testimony is contradicted by that of the defendant and her two companions, but the jury were the judges of the credibility of the witnesses. In the exercise of this right, the jury might have believed such part of the testimony of any of the witnesses that it believed to be true and rejected such part as it believed to be false. In doing this it might have found that the defendant was driving along the street at an

hour of the day when schoolchildren would cross the street at the grammar-school, and that she was going at a fast rate of speed. The street was straight at that point, and there were no obstructions except the car of Mr. Talley. The street was thirty-five feet wide, and the body of the child was lying on the south side of the street after the accident. She had nearly passed the car of the defendant at the time it struck her. She was picked up a little to the south of Talley's car, and from these circumstances the jury might have found that it was not a case where a child was standing on the sidewalk in a place of safety, and suddenly darted out in the street in front of an approaching automobile. Such a rate of speed as testified to by the plaintiff's witnesses, near a schoolhouse, at an hour of the day when small schoolchildren are accustomed to cross the street in going home, was evidence for the jury to consider in determining the defendant's negligence, and it cannot be said that, under the particular circumstances adduced in evidence by the plaintiff, the court should have told the jury as a matter of law that the defendant was not guilty of negligence.

On the question of the contributory negligence of the plaintiff, the jury had a right to consider her tender age, and also the tendency of children to run across the street near the schoolhouse in going to and from school. It is claimed that, if she had looked, she was bound to have seen the approaching car. With equal confidence it might be said that, if the defendant had been looking, she was bound to have seen the child crossing the street. Under the plaintiff's evidence this is not a case where a child suddenly darted out in the street without warning. The children were in the habit of crossing the street at that hour of the day in going home to lunch. The plaintiff started to run across the street to join some other children on the opposite side. She was on her way home to lunch, and had a right to be on the street. The jury might have inferred that she did not run out

into the street from in front of Mr. Talley's car. He did not see her, and picked her up a little to the south of his car, near to the south side of the street. One of the schoolboys said that she was about fifty steps from Talley's car at the time she was struck. In any event she had got nearly across the street, and the jury might also have considered the fact that the defendant did not know that her car had struck the plaintiff. In other words, the jury might have found that the plaintiff was keeping a watchout commensurate with that required of one of her age, under the circumstances, and that the defendant was not keeping the watchout required of her under the particular circumstances of this case. As sustaining the rule here announced we cite the following cases: *McFadden* v. *Anderson Motor Co.*, 118 S. C. 309, 108 S. E. 919; *Frank* v. *Cohen*, 288 Pa. 221, 135 Atl. 624; *Rankin* v. *Ward Baking Co.*, 272 Pa. 108, 116 Atl. 58; *Silberstein* v. *Showell, Fryer & Co.*, 267 Pa. 298, 109 Atl. 701; *Mulhern* v. *Philadelphia Home-Made Bread Co.*, 257 Pa. 22, 101 Atl. 74; *Lampton* v. *Davis Standard Bread Co.*, 48 Cal. App. 116, 191 Pac. 710; *Wong Kit* v. *Crescent Creamery Co.*, (Cal. App.) 262 Pac. 481; *Tripp* v. *Taft*, 219 Mass. 81, 106 N. E. 578; *Emery* v. *Miller*, 231 Mass. 243, 120 N. E. 655; *Davicki* v. *Flanagan*, 231 Mass. 243, 145 N. E. 449; *Gaulin* v. *Yagoobian*, 261 Mass. 145, 158 N. E. 352.

It is next insisted that the court erred in instructing the jury that the burden was on the defendant to establish the contributory negligence of the plaintiff, and that, in determining the question of the plaintiff's contributory negligence, the jury was instructed that she would only be required to exercise that degree of care that a child of her age and intelligence would ordinarily exercise under similar circumstances. This instruction is in accord with the principles of law decided in the cases above cited, and in many others which might be cited. But it is contended by counsel for the defendant that the instruction is erroneous because the court did

not tell the jury that the burden of proof would not be on the defendant to establish contributory negligence if it was shown by the plaintiff's own evidence. It is plain that, when the whole charge is considered, the court did not intend by the instruction complained of to tell the jury that the defendant must introduce evidence to show contributory negligence, even though it was shown by the evidence of the plaintiff. At the request of the defendant the court gave, as modified, an instruction on contributory negligence, and in it told the jury that, if it should find from the evidence that the injury complained of was caused or contributed to by the failure of the plaintiff to exercise a degree of care that a child of plaintiff's age and intelligence ordinarily exercised under the same or similar circumstances, and but for which acts the injury complained of would not have occurred, then the verdict should be for the defendant. Under this instruction the jury might have found from the evidence of the plaintiff, as well as from that adduced by the defendant, that the plaintiff was guilty of contributory negligence upon the whole evidence in the case. If the defendant thought otherwise, a specific objection to the instruction should have been made. *St. L. I. M. & S. Ry. Co.* v. *Sparks,* 81 Ark. 187, 99 S. W. 73.

It is next insisted that the court erred in giving an instruction on the measure of damages. That part of the instruction complained of reads as follows:

"Your verdict will be for such sum as will reasonably compensate her for all pain and suffering, if any, both of body and mind, suffered by plaintiff on account of the injuries received."

It is contended that there is no evidence in the case of mental suffering for which compensation could have been had. It is insisted that the bodily injuries of the plaintiff were not permanent, and that there is no evidence of suffering of mind for which compensation could be asked or awarded. We do not agree with counsel in

this contention. The plaintiff was attended by a physician, who considered it necessary to place her leg in a cast and keep it there for six weeks. She was suffering great pain after the accident. The plaintiff might have suffered in mind by reason of the accident. She might have thought that the fracture in her leg would not heal up so that her leg would be straight and normal in the future. Here again, if counsel for the defendant had thought that prejudice would result from the form of this instruction, a specific objection should have been made. *Prairie Creek Coal Mining Co.* v. *Kittrell*, 106 Ark. 138, 153 S. W. 89; *Ferguson & Wheeler Land, Lumber Handle Co.* v. *Good*, 112 Ark. 260, 165 S. W. 628; *Mills* v. *Franklin*, 130 Ark. 80, 196 S. W. 928; *Arkansas Short Leaf Lumber Co.* v. *Wilkinson*, 154 Ark. 455, 243 S. W. 819.

Complaint is made that the court refused to give certain instructions asked by the defendant. We do not deem it necessary to set out these instructions or comment upon them at length. We have examined the instructions given by the court and those refused by it. The instructions given fully and fairly covered the issue of the negligence of the defendant, as well as the contributory negligence of the plaintiff. The requested instructions were either covered by the instructions given for the plaintiff or they were not in harmony with the principles of law decided in the cases above cited.

Finally, it is insisted that the verdict is excessive. We cannot agree with counsel in the contention that a verdict of $400 is excessive, under the proof made by the plaintiff. According to her own testimony she suffered great pain. She took four morphine tablets to make her sleep after the injury, and they did not ease her. According to the testimony of her mother, she did not rest, but cried all the time for four or five days after the injury. It was ten days before they could put the cast on her leg, and she wore the cast six weeks. She was on crutches two and one-half months. Accord-

ing to the testimony of the physician who attended her, the injury was to the bone, and she suffered for several days a great deal. There was a fracture in the bone, and it was necessary to place her leg in a cast after the raw area had been healed up. At the time of the injury her leg was raw, bruised, and swollen. The injury was to the ankle of her right leg, at the part that makes the joint at the end of the large bone in the leg. These circumstances, if believed by the jury, warranted it in returning a verdict of $400 for the plaintiff.

We find no prejudicial error in the record, and the judgment will therefore be affirmed.