Thomas FUQUA, Plaintiff,

v.

Howard Albert DEAPO and Diebold, Inc.,
Defendants.

Civ. A. No. 862.

United States District Court
W. D. Arkansas,
Texarkana Division.

Jan. 9, 1964.

W. H. Arnold, III, of Arnold & Arnold,
Texarkana, Ark., for plaintiff.

Willis B. Smith, of Smith, Sanderson,
Stroud & McClerkin, Texarkana, Ark.,
for defendants.

JOHN E. MILLER, Chief Judge.

The motion of defendant Diebold,
Inc., for summary judgment was filed
August 16, 1963, supported by an affi-
davit of defendant Howard Albert Deapo.
Simultaneously with the filing of the
motion and affidavit, the movant sub-
mitted a memorandum in support there-

of. On August 24, 1963, plaintiff filed his response to the motion, and at the same time submitted to the court a memorandum in opposition to the motion. On August 26, 1963, the court granted the moving defendant leave to file an amendment to his motion and additional affidavits or other documents in support thereof. Likewise, the plaintiff was granted leave to file any additional response to the original motion or to any amended motion, together with counter-affidavits or documents if he so desired.

The court did not fix any time in which the parties were required to perfect the motion and response, because it was apparent that due to the press of business in the other Divisions, the court would not have an opportunity to consider the motion for several months.

On December 27, 1963, the moving defendant filed the affidavits of J. M. Pope, Billy G. Moon, and Jack Jorgensen and an amended affidavit of Howard A. Deapo, and submitted an addendum to the original memorandum in support of the motion for summary judgment and in answer to the plaintiff's memorandum in opposition to the motion. Copies of each of the affidavits and the addendum were served on the attorneys for plaintiff on the same date.

Upon receipt of the addendum the court on the same date wrote the attorneys for the parties and advised the attorneys for plaintiff that if they should desire to submit a reply to the addendum to defendant's memorandum, or desired to submit any other affidavits or documents in opposition to the motion, the same should be submitted within a reasonable period of time. In the same letter, I called the attorneys' particular attention to Rule 56(e), Fed. R.Civ.P., as amended, effective July 1, 1963.

On January 2, 1964, the plaintiff submitted his response or answer brief to the addendum to the original memorandum submitted by the moving defendant.

Rule 56(c), Fed.R.Civ.P., provides, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The amendment of January 21, 1963, to section (e) of the rule became effective July 1, 1963. The amendment provides:

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The amendment was added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. The Third Circuit decisions held that even though a movant for summary judgment supported his motion by affidavits or other evidentiary matter sufficient to show that there was no genuine issue as to a material fact, and the adverse party, in opposing the motion, did not produce any evidentiary matter, or produced some but not enough evidence to establish that there was a genuine issue for trial, but relied on the averments of his pleadings which on their face presented an issue, the motion for summary judgment should be denied, particularly if the averments were well pleaded and not supposititious, conclusory, or ultimate. The courts in the other Circuits, particularly the Eighth Circuit, had for years been holding substantially in accordance with the amendment to the rule above referred to. See,

Marion County Co-Op Ass'n v. Carnation Company, (W.D.Ark.1943) 114 F.Supp. 58, aff'd (8 Cir. 1954) 214 F.2d 557.

This action was commenced in the Circuit Court of Miller County, Arkansas, and in due time removed to this court, on the grounds of diversity and the amount in controversy.

The plaintiff alleged in his complaint that on December 24, 1962, at approximately 11:20 p. m., he was driving and operating his automobile on the street in the City of Texarkana, Arkansas; that a collision occurred between his automobile and one driven by the defendant Howard Albert Deapo, who was an employee of the defendant Diebold, Inc.; that at the time of the collision the said Howard Albert Deapo was "acting within the course and scope of his employment with the defendant Diebold, Inc." Then the plaintiff alleged certain specific acts of negligence and prays for judgment in the sum of $35,000.

The defendants in their petition for removal alleged "plaintiff was and is now a resident, citizen and domiciliary of the State of Arkansas; and petitioner herein, Howard Albert Deapo, one of defendants in said cause, was and is now a resident, citizen and domiciliary of the State of Missouri; and petitioner herein, Diebold, Inc., one of defendants in said cause, at all such times was and is now a corporation, duly incorporated under the laws of the State of Ohio, and at all such times had, and now has, its principal place of business in the State of Ohio; and that there is complete diversity of citizenship between the parties plaintiff and defendants in this cause."

Within due time after the removal the defendants filed their joint answer, in which they admitted that the defendant Deapo, on the date of the collision of the automobiles driven by plaintiff Fuqua and the defendant Deapo, was an employee of the defendant Diebold, Inc., but they denied that at such time the defendant Deapo "was acting within the scope of his employment." Other denials are made in the answer which are immaterial in the consideration of the motion for summary judgment.

In the motion for summary judgment movant, Diebold, Inc., in numbered paragraph II alleged:

"Defendants Howard Albert Deapo and Diebold, Inc., have admitted in their answer that defendant Howard Albert Deapo was employed by defendant Diebold, Inc., at the time of the collision, but have denied that he was then and there acting within the scope of his employment."

In numbered paragraph III of the motion, the movant alleged:

"There is no genuine issue as to the fact that the defendant Howard Albert Deapo was not acting in pursuance of his employer's business at such time and place, it being undisputed that he was on a personal mission of his own, and the defendant Diebold, Inc., therefore, is entitled to summary judgment in its favor as a matter of law."

It will be borne in mind that at the time the motion was filed the defendant Diebold, Inc., only filed one affidavit in support of the motion, that of the defendant Howard Albert Deapo dated August 13, 1963.

In the response to the motion the plaintiff in paragraph II alleged:

"Defendants, Howard Albert Deapo and Diebold, Inc., have admitted in their answer that defendant, Howard Albert Deapo, was employed by defendant, Diebold, Inc., at the time of the collision, and have further admitted by the affidavit of Howard Albert Deapo, attached to, defendants' motion for summary judgment, that Diebold, Inc., regularly furnished the vehicle involved in the collision to Deapo, both for business and for his own personal use. These admitted facts

create a prima facie case that the defendant, Howard Albert Deapo, was acting within the scope of his master's business at the time of the said collision. This presumption is not rebutted by the affidavit of Howard Albert Deapo, and the question of scope of authority should be left as a question of fact for determination by the jury."

Plaintiff further alleged that there was a genuine issue of material fact and that the plaintiff is entitled to have the statement of the defendant Deapo, as well as his credibility, presented to the jury and to have such testimony viewed by the jury in the light of cross examination.

As heretofore stated, the moving defendant on December 27, 1963, filed a more detailed affidavit of the defendant Deapo, which was executed on December 23, 1963. Also, at the same time the movant filed an affidavit of Jack Jorgensen executed December 23, 1963; an affidavit of Billy G. Moon executed December 26, 1963; and an affidavit of J. M. Pope, executed on December 26, 1963, but the plaintiff has not filed any affidavits or other documents. In view of the contention of the plaintiff, it seems advisable to copy in toto the affidavits filed by the movant.

In the affidavit of Jack Jorgensen, he stated:

"I am Regional Service Manager for Diebold, Inc., and am the immediate superior of Howard A. Deapo. On October 29, 1962, a 1962 Chevrolet Station Wagon designated as DC–19–F was furnished to Mr. Deapo for use for his business and pleasure. This car was leased by Diebold, Inc. from Transportation Vehicles, Incorporated, and is a service car and is used in the performance of the normal operations of our service department. The use of the car, as designated by the company, is that the car is to be treated as the employee's own personal car—for business and pleasure —and for any personal use, vacations, etc., the employee is to supply the gas and oil. Other maintenance, such as repairs, tire replacement, etc., are taken care of by special authorization of Transportation Vehicles, Incorporated, upon request.

"Mr. Deapo's territory in December of 1962 was the west half of Missouri and all of Kansas, but on special orders from me, he was authorized to go into other territories to perform work for Diebold, Inc. I gave him no special orders to perform any work in Arkansas or Texas during the month of December, 1962. Particularly, he was neither instructed nor authorized to do any work on behalf of Diebold, Inc. in and around Texarkana, Arkansas or Texarkana, Texas, in December of 1962.

"He was authorized to use the 1962 Chevrolet Station Wagon for his personal transportation over the Christmas holidays, subject only to the requirement mentioned above; that is, that he supply the gas and oil for such personal use."

In the affidavit of Deapo executed December 23, 1963, he stated:

"My name is Howard A. Deapo. I live at 5325 North Cleveland, Kansas City 19, Missouri, with my wife, Connie. I am employed by Diebold, Inc. My employer sells and services vault doors, safes, bank equipment and mechanized office equipment. My principal duties are maintenance of this equipment for my employer. My territory is the west half of Missouri and all of Kansas. On special orders from my employer, I go into other territories, but I have never worked for my employer in the State of Arkansas or in the State of Texas. Last Christmas, my wife and I traveled to Texarkana to spend a part of the holidays with her parents, Mr. and

Mrs. J. M. Pope, who live at 401 Artesian Avenue, Texarkana, Arkansas. We arrived in Texarkana on December 22, 1962, and planned to return to Kansas City December 26, 1962.

"In my employment, I am furnished an automobile by my employer. In December of 1962, I was driving a 1962 Chevrolet Station Wagon, which was furnished to me for use in my employment and also personal use. My company designates the use of the car as for business and pleasure; that is, the car is to be treated as my own personal car, but for any personal use or vacations, I am required to supply the gas and oil. Maintenance, such as repairs, tire replacement, etc., are taken care of by my employer or its lessor upon request.

"On Christmas Eve, December 24, 1962, my wife and I left Mr. and Mrs. Pope's home at 401 Artesian Avenue in the early evening; that is, around 6:30 or 7:00 p. m., and went to a high school band reunion. Following our visit at this reunion, we stopped at the home of Mr. and Mrs. Billy G. Moon, at 613 East Street, Texarkana, Arkansas, for a visit with them and other friends. Following this visit with our friends, we departed Mr. Moon's house and started toward Mr. Pope's house. On the way to Mr. Pope's house, we were involved in the collision which gave rise to this lawsuit.

"I was not engaged on business for my employer at any time during my visit in Texarkana during the Christmas holidays, 1962, and had no work which I planned to do for my employer until I returned to Kansas City."

J. M. Pope in his affidavit of December 26, 1963, stated:

"My name is J. M. Pope. I am 55 years of age and live at 401 Artesian Avenue, Texarkana, Arkansas, with my wife. My son-in-law is Howard Deapo, who works for Diebold, Inc., as a locksmith, and who lives in Kansas City, Missouri.

"Howard Deapo and my daughter, Connie Deapo, came to my home for a visit on about December 20, 1962, for the Christmas holidays. He and my daughter drove to Texarkana, Arkansas, to my home, in a 1962 Chevrolet station wagon automobile furnished him by his employer, Diebold, Inc. He had his tools with him, but did not do any work while he was visiting in my home over these holidays. Howard Deapo and Connie left my home about 7:00 p. m., on December 24, 1962, to visit friends. This was Christmas Eve. They were involved in a traffic accident while returning to my home later that evening. They had planned to return to Kansas City on December 26, 1962, but the automobile accident delayed their departure until about December 28, 1962. I put them on the train for their return trip to Kansas City."

In the affidavit of Billy G. Moon of December 26, 1963, he stated:

"I am 27 years of age, married, and live at 613 East Street, Texarkana, Arkansas. Howard Deapo, who lives at Kansas City, Missouri, and who is employed by Diebold, Inc., and his wife, Connie, are personal friends of mine. I first met Howard about five or six years ago when we were stationed in the Service together at Lake Charles, Louisiana.

"Howard Deapo and his wife, Connie, came to my home on the evening of December 24, 1962, for a social visit. They were visiting with Connie's mother and father, who are Mr. and Mrs. J. M. Pope,

over the holidays. They arrived at my home about 8:30 or 9:00 p. m., on Christmas Eve, December 24, 1962, and visited with my wife and me and several other friends. They stayed at my home for about two hours visiting, and then started back to Mr. Pope's home, where they were staying. Shortly after they left I received a telephone call from Howard to advise me that he had been in a traffic accident, and I went to the scene, which was about four blocks from my house, on the way to Mr. and Mrs. Pope's house. I do not know whether Howard Deapo had his tools with him, but I do know that he did not perform any work for his employer on the evening of December 24, 1962."

It is admitted by all parties that the automobile which the defendant Deapo was driving was furnished to him by his employer, the movant, Diebold, Inc., and was to be considered as defendant Deapo's "own personal car—for business and pleasure—and for any personal use, vacations, etc., the employee is to supply the gas and oil. Other maintenance, such as repairs, tire replacement, etc., are taken care of by special authorization of Transportation Vehicles, Incorporated, upon request." The defendant Deapo's territory in December, 1962, was the west half of Missouri and all of Kansas, but on special orders from Mr. Jorgensen he was authorized to go into other territories to perform work for the movant. No special orders to perform work in Arkansas or Texas during the month of December, 1962, were given. Deapo was authorized to use the automobile "for his personal transportation over the Christmas holidays, subject only to the requirement mentioned above; that is, that he supply the gas and oil for such personal use."

In Hunter v. First State Bank of Morrilton, (1930) 181 Ark. 907, beginning at page 908, 28 S.W.2d 712, at page 713, the court stated:

"The suit is predicated upon the theory that the facts called for the application of the doctrine of respondeat superior which rests upon the proposition that in doing the acts out of which the accident arose, the servant was representing the master at the time and engaged in his business. It is conceded that the doctrine cannot be invoked unless, at the time of the negligent act causing the injury, the servant was engaged in performing a service for the master or incidental thereto. It is generally stated by text-writers and in judicial decisions that the test of the liability of the master for his servant's acts is whether the latter was at the time acting within the scope of his employment. The phrase 'in the scope of his employment or authority,' when used relative to the acts of the servant, means while engaged in the service of his master or while about his master's business. It is not synonymous with 'during the period covered by his employment.'

"In the application of the rule in Sweeden v. Atkinson Improvement Co., 93 Ark. 397, 125 S.W. 439, 27 L.R.A.(N.S.) 124, it was held that a master was civilly liable for an injury caused by the negligent act of his servant when done within the scope of his employment, even though the master did not authorize or know of such acts or may have disapproved or forbidden them. It was further held that a master is not liable for an independent, negligent, or wrongful act of his servant done outside of the scope of his employment, and that the act of a servant for which his master is liable must pertain to something that is incident to the employment for which he is hired, and which

it is his duty to perform or do for the benefit of the master.

"Again, in Wells Fargo & Co. Express v. Alexander, 146 Ark. 104, 225 S.W. 597, it was held that the test of a master's liability for his servant's tortious acts is not whether they were done during the existence of the servant's employment, but whether they were committed in the prosecution of the master's business, and pertained to the particular duties of the servant's employment.

"In the later case of American Railway Express Co. v. Mackley, 148 Ark. 227, 230 S.W. 598, a review was made of all our earlier decisions on the subject. The court declared that the established rule to be in this state that the test of a master's liability for the act of a servant is not whether a given act was done during the existence of the servant's employment, but whether it was committed in the prosecution of the master's business. This rule has been recognized and applied by this court in a suit for damages against the owner of an automobile for injuries sustained by a third person on account of the negligence of the chauffeur."

See, also, United Transport Inc. v. Wilson, (1958) 228 Ark. 1058, 312 S.W.2d 191; St. Louis and S. F. R. Co. v. Van Zant, (1912) 101 Ark. 586, 142 S.W. 1144.

The plaintiff in support of his contentions set forth in his response to the motion argues in his brief that the fact that the automobile being driven by the defendant Deapo was furnished him by the moving defendant creates a presumption that he (Deapo) was acting within the scope of his employment or in the course of his master's business; that once this fact is admitted or established by evidence the presumption arises, and the presumption cannot be overcome prior to trial by affidavits submitted on behalf of the defendant; that such a procedure would prevent the plaintiff from cross examining the parties and would prevent the jury from weighing the evidence and determining the credibility of the witnesses; and that it would be a great expense to the plaintiff to take the deposition of each party signing an affidavit, particularly in view of the great distance from the situs of some of the witnesses.

In Mullins v. Ritchie Grocer Company, 183 Ark. 218, 35 S.W.2d 1010, the court again stated the general rule, "that in order to hold an employer liable for injuries by an automobile while being driven by or for a salesman or collector, the relation of master and servant must exist, and the servant must, at the time have been acting within the scope of his employment in performing an act for the master's benefit." The court further held "that the phrase 'in the course of scope of his employment or authority,' when used relative to the duties of the servant or employee, in cases of this sort, means while engaged in the service of his master or while about his master's business."

At page 222 of 183 Ark., at page 1011 of 35 S.W.2d the court said:

"The doctrine is settled in this state that, if the automobile causing the accident belongs to the defendant and is being operated at the time of the accident by one of the regular employees of the defendant, there is a reasonable inference that at such time he was acting within the scope of his employment and in the furtherance of his master's business. The inference or presumption of fact, however, may be rebutted or overcome by evidence adduced by the defendant during the trial. Where the evidence on this point is contradictory, the question is one for the jury. Where the facts are undisputed, and uncontradicted, it becomes a question for the court.

Healey v. Cockrill, 133 Ark. 327, 202 S.W. 229, L.R.A.1918D, 115; Bizzell v. Hamiter, 168 Ark. 476, 270 S.W. 602; and Hunter v. First State Bank of Morrilton, 181 Ark. 907, 28 S.W.2d 712."

In Lion Oil Refining Company v. Smith, (1939) 199 Ark. 397, 133 S.W.2d 895, the court further discussed the rule announced in Mullins, supra, and quoted with approval 6 Labatt on Master and Servant, 2d Ed., Sec. 2281A, as follows:

" 'A servant may be presumed prima face to have been acting in the course of his employment, wherever it appears, not only that his master was the owner of the given instrumentality, but also that, at the time when the alleged tort was committed, it was being used under conditions resembling those which normally attended its use in connection with the master's business.' "

The theory underlying a motion for summary judgment is substantially the same as that underlying a motion for a directed verdict. The essence of both motions is that there is no genuine issue of material fact to be resolved by the trier of the facts. In accordance with the theory of a directed verdict, a court should not grant summary judgment where it could not properly direct a verdict, although it might properly set a verdict aside as against the weight of the evidence. Thus, a motion for summary judgment should not be granted on the ground that if a verdict were rendered for the adverse party, the court would set it aside as against the weight of the evidence.

A summary judgment should be based on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. It is not the trial court's function to pass upon credibility in evaluating the evidentiary material in support of and in opposition to a motion for summary judgment where the issue of credibility would properly be for the jury. See, 6 Moore's Federal Practice, 2d Ed., p. 2032.

Here the facts are undisputed. The defendant Deapo was an employee of the movant. He was furnished an automobile for use in the discharge of his duties to his employer, and was also given the right to use the automobile as his own while on vacations or while not engaged in the performance of his duties as an employee of the moving defendant. The defendant Deapo and his wife traveled from their home in Kansas City to spend a part of the holiday period with Mrs. Deapo's parents, Mr. and Mrs. J. M. Pope, of Texarkana, Arkansas. They arrived in Texarkana on December 22, 1962, and had planned to return to their home in Kansas City on December 26, 1962. On Christmas Eve, December 24, 1962, Mr. and Mrs. Deapo left the home of her father and mother in the early evening. They went to a high school band reunion. From there they stopped at the home of Mr. and Mrs. Billy G. Moon for a visit with them and other friends. When the visit at the Moon home ended, they departed and were traveling toward the home of Mr. and Mrs. Pope, parents of Mrs. Deapo. On the way from the Moon home to the Pope home the collision occurred. The defendant Deapo was not engaged in any work of any kind for his employer, and had no plans to engage in any work for his employer until after his return to Kansas City.

Mr. Pope and Mr. Moon in their affidavits corroborated the statements of the defendant Deapo.

In Union Central Ins. Co. v. Simms, (1945) 208 Ark. 1069, at page 1074, 189 S.W.2d 193, at page 195, the court said:

"A naked presumption, though sufficient to justify a verdict for the party in whose favor it exists,

must nevertheless give way to facts. It is merely a rule of evidence casting upon the defendant the burden of proving that the transaction occurred in a particular way."

In Old Republic Ins. Co. v. Martin, (1959) 229 Ark. 1065, at page 1066, 320 S.W.2d 266, at page 268, the court approved the following statement:

" 'Presumptions give way to reality when facts opposing presumptions are presented, as term "presumption" signifies that which may be assumed without proof or taken for granted and is defined as something asserted as self-evident result of human reason and experience.' "

Again, on page 1067 of 229 Ark., on page 268 of 320 S.W.2d, the court approved the following:

" 'Under the cases above cited, it is uniformly held as a presumption of fact, not of law, that where a letter, properly and sufficiently addressed and properly stamped, is mailed, that it was received by the addressee in due course of mail. But the presumption ceases to exist where the addressee denies receiving the letter. In that case it becomes a question of fact whether the letter was received.

" 'The presumption arising where proof shows a letter properly mailed is not conclusive presumption of law, but a mere inference of fact founded on the probability that the officers of the government will do their duty. Such a presumption can of course be rebutted. Bluthenthal v. Atkinson, 93 Ark. 252, 124 S.W. 510.' "

The inference or presumption of fact arising from the admitted fact that the movant had furnished the automobile to the defendant Deapo is completely overcome by the facts set forth in the affidavits of Jorgensen, Pope and Moon, to say nothing about the facts set forth in the affidavit of the defendant Deapo.

This is not a case where if upon a trial on the merits the jury should return a verdict for plaintiff against Diebold, Inc., the court would be justified in setting it aside as against the weight of the evidence. On the other hand, it is a case that, upon a trial on the merits, a jury would not be at liberty to disbelieve the facts established by the affidavits, and the court would be required to direct a verdict for the movant, Diebold, Inc.

The case of Healey v. Cockrill, (1918) 133 Ark. 327, 202 S.W. 229, L.R.A. 1918D, 115, is a case where the defendant, Mrs. Cockrill, was sued because of the alleged negligent operation of an automobile by her chauffeur. The liability of Mrs. Cockrill turned on the question of whether or not the driver of her car was, at the time of the collision with an automobile driven by the plaintiff, Healey, acting within the scope of his employment, or whether he had completely abandoned the business of his employer and was acting entirely for himself. The automobile of Mrs. Cockrill was kept in a garage situated to the rear of her home in Little Rock. When she needed the car, she would call the chauffeur, who would bring the car around to the front of the house where Mrs. Cockrill would enter it. On the day of the collision with the automobile driven by the plaintiff, Mrs. Cockrill had called her chauffeur and requested that the car be brought to the front of her home, but instead of driving directly to the front of the home, the chauffeur suddenly decided he needed some cigarettes, and without the knowledge of Mrs. Cockrill went on a trip to a drug store to buy cigarettes before placing the car in front of the home in accordance with instructions. In disposing of the case, the court, beginning at page 330 of 133 Ark. at page 230 of 202 S.W. said:

"General principles of law applicable to the facts of this case have been repeatedly stated by this court. In the case of Little Rock & Ft. Smith Ry. Co. v. Miles, 40 Ark. [298] 322, the court said: 'The rule is firmly established that the master is civilly liable for the tortious acts of his servant whether of omission or commission, and whether negligent, fraudulent, or deceitful, when done in the line of his employment, even though the master did not authorize or know of such acts, or may have disapproved of or forbidden them. * * * But the act must be done, not only while the servant is engaged in his master's service, but it must pertain to the particular duties of that employment.' That language was quoted with approval by this court in the more recent case of Robinson v. St. Louis, I. M. & S. Ry. Co., 111 Ark. 208, 212, 163 S.W. [500] 501, where we said: 'An act is within the scope of the servant's employment, where necessary to accomplish the purpose of his employment, and intended for that purpose, although in excess of the powers actually conferred on the servant by the master. The purpose of the act, rather than its method of performance, is the test of the scope of employment.' And in Sweeden v. Atkinson Improvement Co., 93 Ark. [397, 398] 402, 125 S.W. [439] 441, we said: 'The mere fact that he was in the service generally of the master or that the servant was in possession of facilities afforded by the master in the use of which the injury was done would not make the act attributable to the master. The act must have been done in the execution of the service for which he was engaged. And if the servant steps aside from the master's business to do an independent act of his own and not connected with his master's business, then the relation of master and servant is for such time, however short, suspended; and the servant, while thus acting for a purpose exclusively his own, is a stranger to his master for whose acts he is not liable.' "

Following the above quotation, the court said:

"If a servant completely turns aside from the master's business and pursues business entirely his own, the master is not responsible."

The trial court at the conclusion of the testimony in the case instructed a verdict for the defendant, Mrs. Cockrill, which action was affirmed by the appellate court with the following statement on page 334 or 133 Ark., on page 231 of 202 S.W.

"We think that the facts present clearly a case of a complete departure from the employer's business, and that the court was correct in holding as a matter of law that the facts shown excluded all elements of responsibility on the part of appellee for the unauthorized act of her servant. The judgment of the court is, therefore, affirmed."

See, also, Bizzell v. Hamiter, (1925) 168 Ark. 476, 270 S.W. 602.

From a consideration of the entire record the court is convinced that there is no genuine issue as to any material fact and that the movant, Diebold, Inc., is entitled to a judgment as a matter of law.

Therefore, an order is being entered today sustaining the motion for summary judgment and dismissing the complaint of plaintiff against the defendant, Diebold, Inc.